UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DÉJÀ VU OF CINCINNATI, LLC, | : | |
| 516 Batavia Pike | | |
| Mt. Carmel, Ohio 45244 | : | CASE NO: 1:99-CV-726 |
| | | HON. SANDRA S. BECKWITH |
| Plaintiff, | : | |
| | | |
| v. | : | |
| | | |
| THE UNION TOWNSHIP BOARD OF | : | |
| TRUSTEES, | | |
| 4312 Gleneste-Withamsville Road | : | **MEMORANDUM IN SUPPORT OF** |
| Cincinnati, Ohio 45245 | | **PLAINTIFF'S MOTION FOR** |
| | : | **PARTIAL SUMMARY JUDGMENT** |
| KENNETH GEIS, in his official capacity | | |
| only as Administrator of Union Township | : | **ORAL ARGUMENT REQUESTED** |
| 4312 Gleneste-Withamsville Road | | **PURSUANT TO L.R. 7.1(b)(2)** |
| Cincinnati, Ohio 45245 | : | |
| | | |
| and | : | |
| | | |
| UNION TOWNSHIP POLICE | : | |
| DEPARTMENT, a division of the | | |
| Public Safety Department of Union | : | |
| Township, Ohio | | |
| 4312 Gleneste-Withamsville Road | : | |
| Cincinnati, Ohio 45245 | | |
| | : | |
| Defendants, | | |
| | : | |
| and | | |
| | : | |
| JIM PETRO, ATTORNEY GENERAL OF | | |
| THE STATE OF OHIO, | : | |
| | | |
| Intervenor. | : | |

**TABLE OF CONTENTS/SUMMARY PURSUANT TO L.R. 7.2(a)(3)**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   SUMMARY JUDGMENT STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   LEGAL ARGUMENT

      A.     RESOLUTION NO. 99-15 IS UNCONSTITUTIONAL IN THAT ITS INSPECTION PROVISIONS VIOLATE BOTH THE FIRST AND FOURTH AMENDMENTS.
          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

The inspection provisions in the Resolutions are unconstitutional under the First and Fourth Amendments to the United States Constitution, as well as the parallel provision in the Ohio Constitution, as they constitute impermissible searches, and are not limited in time, place and scope. *J.L. Spoons, Inc. v. City of Brunswick*, 49 F. Supp.2d 1032 (N.D. Ohio 1999); *State v. VFW Post 3562*, 37 Ohio St.3d 310, 525 N.E.2d 773 (1988); *State v. Penn*, 61 Ohio St.3d 720, 576 N.E.2d 790 (1991); and *Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980).

      B.     RESOLUTION NO. 99-15 IS UNCONSTITUTIONAL IN THAT IT REQUIRES THE DISCLOSURE OF INFORMATION THAT HAS NO SUBSTANTIAL RELATION TO UNION TOWNSHIP'S PURPORTED GOVERNMENTAL INTEREST AND WHICH VIOLATES FEDERAL RIGHTS TO PRIVACY AND ANONYMITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

It is unconstitutional under the First and Fourteenth Amendments, and the corollary rights of privacy thereto, to require the disclosure of certain information as a prerequisite for being able to engage in First Amendment protected activities. There is insufficient necessity on the part of the Township to justify such an intrusion into First Amendment rights. *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 357 (1995); *Buckley v. Valeo*, 424 U.S. 1, 64 (1975); and *Ellwest Stereo*

*Theatre, Inc. v. Boner*, 718 F.Supp. 1553, 1564-70 (M.D. Tenn 1989).

C.    UNION TOWNSHIP HAS UNFETTERED DISCRETION IN FINDING A VIOLATION OF THE RESOLUTION TO DENY OR REVOKE A LICENSE. 13

The Resolutions place unfettered discretion into the hands of the Township to grant, deny, suspend, or revoke a permit, and this constitutes an impermissible prior restraint of constitutionally protected expression. There is nothing in the Resolutions to prevent the Township from using whatever violations of the Resolutions it so desires to deny or revoke a permit, a fact that was admitted by the Township's designated representative.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990); *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358 (11th Cir. 1999); and *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992).

D.    THE EMPLOYEE DISCLOSURE REQUIREMENT IN THE APPLICATION PROCESS IS UNCONSTITUTIONAL BECAUSE IT DOES NOT FURTHER AN IMPORTANT OR SUBSTANTIAL GOVERNMENTAL INTEREST.  . . . . . . 17

The Resolution requires disclosures regarding each employee, and that the employer authorize an investigation into the background and criminal record of each employee. The Township's designated representative admitted that the information required is not considered by the Board of Trustees in the application process, therefore it does not advance the stated governmental interest given for those disclosure requirements. *United States v. O'Brien*, 391 U.S. 367 (1968); and *Edenfield v. Fane*, 507 U.S. 761(1993).

E.    THE LICENSING PROVISIONS ARE UNCONSTITUTIONAL. . . . . . . . . . 22

1.    THE UNCONSTITUTIONALITY OF USING PRIOR CRIMES AND MISCONDUCT TO PRECLUDE EXERCISE OF FIRST AMENDMENT RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

There are three disability provisions in the Resolutions.  The first two are unconstitutional because to preclude someone from engaging in constitutionally protected conduct due to prior

illegality effectuates an impermissible prior restraint. Further, the Resolution imposes an absolute legal impediment to constitutionally protected expression based upon these disabilities. The third disability provision is additionally unconstitutional because that disability provision is for any violation of the Resolution, and it is for all time. *Ellwest Stereo Theatre, Inc. v. Boner*, 718 F. Supp. 1553 (M.D. Tenn. 1989); *Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986); and *Deja Vu of Nashville, Inc., et al. v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 274 F.3d 377 (6th Cir. 2001).

2.      THE LACK OF A MENS REA ELEMENT AND THE INABILITY TO REFUTE THE CONVICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

The disability provisions of the Resolution impose absolute strict liability regarding violations, and therefore create an irrebuttable presumption against licensure, which is impermissible. Additionally the disability provisions contain absolutely no mens rea requirement, further rendering the provisions unconstitutional. *Pentco, Inc. v. Moody*, 474 F. Supp. 1001 (S.D. Ohio 1978); and *Lee v. Newport*, No. 91-00613, 947 F.2d 945 (Table) (6th Cir. Nov. 5, 1991), at 1991 WL 227750.

F.      THE "NO TOUCH" PROVISIONS ARE UNCONSTITUTIONAL. . . . . . . . . 32

The "no touch" provisions of the Resolution prohibit touching even between and among entertainers, regardless of whether they are fully clothed, and such provisions are overbroad, and constitute a total ban on a particular type of protected expression. *Schultz v. City of Cumberland*, 228 F.3d 831 (7th Cir. 2000); and *Dream Palace, LLC v. County of Maricopa*, 384 F.3d 990 (9th Cir. 2004).

G.     BOTH RESOLUTIONS ARE PREEMPTED BY THE STATE ENABLING STATUTE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Townships only possess police powers specifically conferred to them by statute, and if a power violates an explicit statutory command, it is preempted and therefore invalid and unenforceable. Both Resolutions contain provisions that violate the explicit statutory commands in the enabling statute, rendering them invalid, and the enforcement of those Resolutions are in violation of Plaintiff's constitutional rights. Alternatively, the recently revised enabling statute does not provide for the suspension or revocation of a permit, therefore those provisions of the Resolutions are invalid. *Bd of Twp. Trustees of Bainbridge Twp.  v. Funtime, Inc.*, 55 Ohio St.3d 106, 563 N.E.2d 717 (1990); and *Dsuban et al. v. Union Twp. Bd. of Zoning Appeals*, 140 Ohio App.3d 602, 748 N.E.2d 597 (2000).

V.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## I.    INTRODUCTION

This is an action under the laws and Constitution of the United States alleging that  Union Township, Clermont County, by and through its Board of Trustees, its Township Administrator and its Police Department, in its enforcement capacity, seeks to impose impermissible, unlawful, and unconstitutional restraints on the presentation of non-obscene adult-oriented forms of expression presumptively protected by the First Amendment to the United States Constitution by, among other things, enacting resolutions requiring the licensing and regulation of "adult cabarets."

In an attempt to zone out and close Plaintiff's business and thereby prevent it, and all other adult cabarets, from presenting constitutionally-protected dance performances, Defendant Union Township Board of Trustees has enacted resolutions pursuant to Ohio Rev. Code §§ 503.51 to 503.59 (attached hereto and marked as Exhibit A[1]),  to regulate and license adults cabarets within the unincorporated territory of Union Township.  In particular regard to the claims asserted by Plaintiff, Union Township enacted Resolution 99-15 (hereinafter "Res. 99-15"), a copy of which is attached hereto and marked as Exhibit B, which was set to go into effect on September 9, 1999. After that Resolution was partially enjoined by this Court, Union Township enacted Resolution 00-22 (hereinafter "Res. 00-22"), a copy of which is attached hereto and marked as Exhibit C, which replaced and rendered as a nullity Resolution 99-15.

The Resolutions challenged here are comprehensive licensing schemes of "adult cabarets"

---

[1] As this Court is aware, these enabling statutes were recently amended.  Exhibit A represents the text of those statutes as existed at the time of the enactment of Resolution 99-15 and Resolution 00-22.  The new and current version of these statutes is attached as Exhibit I.

within the Township. As the following discussion demonstrates,[2] the Resolutions are constitutionally infirm in many respects and the Plaintiff is therefore entitled to summary judgment declaring Res. 99-15 and Res. 00-22 unconstitutional and ordering their enforcement to be permanently enjoined.

## II.    FACTS

Plaintiff, Deja Vu of Cincinnati, L.L.C., is a Limited Liability Company duly organized under the laws of the State of Nevada and is authorized and qualified to do business in the State of Ohio. It is the tenant under a lease of an improved single story structure located at 516 Batavia Pike, in Union Township, Clermont County, Ohio (hereinafter "the premises"). Plaintiff operates on these premises a cabaret-style night club that features non-obscene clothed, "topless" and fully nude female performance dance entertainment presented before consenting adult audiences, and which operates under the licensed trade name "Deja Vu." Plaintiff's First Amended Complaint ("Compl."[3]), ¶ 10. Plaintiff is engaged in the presentation of constitutionally protected expression. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (nude dancing receives protections under the Constitution); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (same); *G&V Lounge, Inc. v. Michigan Liquor Control*

---

[2]Although this brief raises challenges to many of the provisions of Res. 99-15 and Res. 00-22, this is not by any means a comprehensive and exhaustive analysis of all of the constitutional infirmities of those Resolutions. Plaintiff includes herein only those challenges which: a) Cannot be disputed under established precedent; b) can be adjudicated upon a facial reading of the Resolutions; or c) have the factual evidence already developed to adjudicate such matters. Plaintiff will reserve the balance of its legal challenges for development at trial, if the same is necessary following this Court's consideration and decision of this motion.

[3] A verification attesting to the factual statements contained in the First Amended Complaint is attached hereto as Exhibit D.

*Comm'n.*, 23 F.3d 1071, 1075 n.1 (6th Cir. 1994) (". . .it nevertheless remains true that topless dancing is (still) constitutionally protected under the First Amendment") (parenthetical in original); and *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129 (6th Cir. 1994) (invalidating an overbroad anti-nudity ordinance prohibiting nude dancing).

Deja Vu opened to the public as a cabaret-style nightclub on April 1, 1999, and continued the form of entertainment which had been in operation at the premises since December of 1995. Deja Vu has been operating continuously. Compl., ¶ 16. To the best of Plaintiff's belief, Plaintiff has been and remains in full compliance with all valid ordinances and statutes affecting its property and the operation of its business. Compl., ¶ 17.

Res. 99-15 regulating adult cabarets within the unincorporated area of the township and the owners, operators, persons in charge, and employees of such establishments, became enforceable on September 9, 1999. Compl., ¶ 30. It required persons or entities to obtain a permit issued by the Board of Trustees of Union Township before operating a defined adult cabaret presenting constitutionally protected dance performances. Id. After Res. 99-15 was partially enjoined by this Court, Union Township enacted Resolution 00-22, which replaced and rendered as a nullity Res. 99-15. Compl., ¶19.

Additional relevant facts will be discussed below.

## III.    SUMMARY JUDGMENT STANDARDS

"As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made." *Harris v. Fitchville Township Trustees*, 154 F.Supp.2d 1182, 1186 (N.D. Ohio 2001). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Id.* at 1186, *citing*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. At this point, the burden then shifts to the non-moving party who "must set forth the specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) *quoting*, Fed.R.Civ.P. Rule 56(e). After the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. *Harris*, 154 F.Supp.2d at 1186. Instead, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324.

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. Rule 56(e). For disputed facts to preclude the entry of summary judgment, they must be material; that is, they must be facts which are defined by substantive law and which are necessary to apply the law. The rule also requires that the dispute be genuine. *Lewis v. Superior Bank FSB*, 270 B.R. 215, 216 (W.D. Mich. 2001). A dispute is genuine if a reasonable jury could return a judgment for the non-moving party. *Id.* at 216, *citing*, *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968). "Only disputes over the facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment. Factual disputes that are irrelevant or

unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248.

## IV.   LEGAL ARGUMENT

### A.   RESOLUTION NO. 99-15 IS UNCONSTITUTIONAL IN THAT ITS INSPECTION PROVISIONS VIOLATE BOTH THE FIRST AND FOURTH AMENDMENTS.

Resolution No. 99-15 provides for the inspections of licensed adult cabarets as follows:

(L)(1)  Township personnel or agents may at all reasonable times inspect permit premises to insure continued compliance with the laws of Ohio and these regulations.

\* \* \* \*

(M)(2)  The owner, operator, or person in charge of the adult cabaret shall allow state or local authorities, including law enforcement officers, access to ***any and all parts of the premises*** for the purpose of making any health or safety inspection pursuant to these regulations. . . . (emphasis added).

In the case of *J.L. Spoons, Inc. v. City of Brunswick*, 49 F. Supp.2d 1032 (N.D. Ohio 1999), the district court was faced with an inspection provision in an adult licensing scheme, *see id.* at 1039-1041, that is almost identical with Paragraph (M)(2) of Res. 99-15.  The only significant difference is that the resolution in *J.L. Spoons* limited inspections to times that the business was actually occupied or open for business, while Res. 99-15 contains no such limitation.  The district court in *J.L. Spoons* concluded that the inspection provision:

> . . . ***violates the Fourth Amendment's prohibition on unreasonable searches. Administrative searches 'are significant intrusions upon the interests protected by the Fourth Amendment,' and generally require that a government official possess 'a suitably restricted search warrant***.' *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523, 534, 539, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). ***This warrant requirement 'applies to commercial premises as well as homes***.' *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). Although there is a narrow exception to the warrant requirement for administrative searches conducted in 'closely regulated' industries, sexually oriented businesses do not qualify as highly regulated industries. See, e.g., *New York v. Burger*, 482 U.S. 691, 700-01, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (finding vehicle dismantling businesses to be highly regulated, like mining and firearms

-5-

industries). Indeed, because sexually oriented businesses enjoy a degree of First Amendment protection, the government probably could not 'closely regulate' them under the *Burger* line of cases without running afoul of the First Amendment.

*J.L. Spoons*, 49 F. Supp.2d at 1040 (emphasis added, parenthetical in original).

The district court in *J.L. Spoons* rejected the city's contention that an "inspection of the premises is not the same as the search of the premises," stating that "quite obviously, in a long line of cases since at least *Camara*, the Supreme Court has recognized that administrative inspections constitute 'searches' within the meaning of the Fourth Amendment." *J.L. Spoons*, 49 F. Supp.2d at 1040 n.6. The court also noted that even if it were to assume that a sexually-oriented business could be considered a 'closely regulated' business for the purposes of the Fourth Amendment, the inspection provision would still clearly fail to satisfy the criteria for warrantless administrative searches, because it "is virtually limitless, and fails to curb the discretion of inspectors 'in time, place, and scope.'" *Id.* at 1040 n.7, citing to *Burger*, 482 U.S. at 702-03.

While the district court decision in *J.L. Spoons* makes it clear that these provisions in Res. 99-15 violates the First and Fourth Amendments to the United States Constitution, they are also violative of the Ohio Constitution as well. Warrantless administrative searches, the Ohio Supreme Court has stated, are only valid if they are executed "pursuant to statutory standards that limit the scope, time, and place of the search." *State v. VFW Post 3562*, 37 Ohio St.3d 310, 314, 525 N.E.2d 773 (1988). That court has also observed that "we believe that Ohio's parallel provision to the Fourth Amendment also protects commercial buildings in the same manner it protects private homes and offices, and thus, we hold that Section 14, Article 1 of the Ohio Constitution protects commercial buildings as well as private homes and offices." *State v. Penn*, 61 Ohio St.3d 720, 723, 576 N.E.2d 790 (1991). The court there concluded by stating that "***the state may not require a***

-6-

***blanket submission to warrantless searches at any time and for any purpose as a condition of doing business***.  Moreover, '. . .a warrantless administrative search may not be used to obtain evidence of general criminality.' *VFW Post 3562*, [37 Ohio St.3d] at 315, 525 N.E.2d at 778." *Penn*, 61 Ohio St.3d at 723, 576 N.E.2d at 793 (emphasis added).[4]

Paragraph (M)(2) of Res. 99-15 contains absolutely no limitations upon the 'time' of the searches; indeed it lacks even the minimal requirement of the ordinance in *J.L. Spoons* that the searches be limited to a time period when the business is occupied or open for business. It also places no limitations upon the 'place' and 'scope' of the searches.  The provision states that the business must allow "access to ***any and all parts of the premises***."  In addition, Paragraph (L)(2) provides that Township personnel or agents can conduct searches at any reasonable time not only to ensure compliance with the Resolution, but with the general "laws of Ohio." This allows searches unlimited in 'place' and 'scope' to obtain evidence as to "general criminality," in violation of *Penn* and *VFW Post 3562*.

In addition, Paragraph (M)(2) requires the permittee to allow state and local authorities, ***including law enforcement officers***, to inspect the premises at any time "for the purpose of making any ***health or safety*** inspections ***pursuant to these regulations***. . .."  First, there are *no "health or safety"* inspections specifically authorized "pursuant to these regulations." Second, "law enforcement officers" do not make "health or safety" inspections.[5]  Such inspections are conducted,

_____

[4]And, the facility at issue in *Penn* was not a First Amendment protected business as is the case here.

[5]It is therefore apparent that the provisions of Paragraph (M)(2) permit inspections for the purpose of obtaining evidence as to "general criminality" in violation of *Penn* and *VFW Post 3562*.

rather, by officials of the local administrative agencies charged with overseeing such matters. Third, these inspection provisions, together with those found in Paragraph (L)(1) which permit inspections for compliance with **all** "the laws of Ohio," impermissibly grant to the governmental authorities the ability to use neutral regulations as a pretext for suppressing protected expression.

In *Ellwest Stereo Theatre, Inc. v. Boner*, 718 F.Supp. 1553 (M.D. Tenn 1989), a district court in this Circuit noted the contention of the plaintiffs that "the required inspections by the health department, the codes administration and the fire marshal are essentially duplications of the periodic inspections required to be performed by the departments and are nothing more than a disguised form of harassment through the placement of additional restrictions on the issuance of a license with no legitimate purpose in fact or law." *Ellwest*, 718 F. Supp. at 1570. The district court concluded, as in this case, that "the defendants have not set forth any rational relationship between the requirement that the proposed establishments be inspected by the codes administration and the fire marshal and the stated purpose of the ordinance and the Court finds that there is none." *Id.*[6]

In *Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980), the Seventh Circuit similarly struck down such inspection provisions. They noted that "there is nothing in the record to indicate that adult bookstores, as a class, contain more faulty light switches or other violations than regular bookstores, as a class. We can hardly take judicial notice that such is the case." 619 F.2d at 1214. The court concluded that:

> Adult bookstores are of course subject to the same lawful health and safety
> regulations of the city code that are applicable to other business establishments in

---

[6]In regard to health inspections, the court noted that while they may be reasonably related to the circumstances of an adult bookstore, that was not the case -- as admitted by the municipality issue there -- in regard to adult cabarets. 718 F. Supp. at 1580. Accordingly, there is no legitimate basis for any additional health inspections here either.

Peoria. Adult bookstores may not, however, be singled out for special regulations unless the city can demonstrate that such action is narrowly devised to further a substantial and legitimate state interest unrelated to censorship or the suppression of protected expression.[7]

*Id.*

It is worth noting that the ordinances in both *Ellwest* and *Genusa* only required the health and safety inspections ***once***, in order that the permit or license may be granted. Res. 99-15 *provides that such inspections may occur **at any time and as frequently as the authorities wish*** (¶¶(L)(2) and (M)(2)). Despite the limited nature of the inspections in *Ellwest*, *Genusa*, and *J.L. Spoons*, as compared to Res. 99-15, the courts in those cases still struck down the provisions as unconstitutional. Given these facts, there can be little doubt that the inspections provisions of Resolution No. 99-15 are unconstitutional. In fact, this Court agreed with the Plaintiff in its September 28, 2000, Order regarding Plaintiff's renewed motion for preliminary injunction, concluding that "Plaintiff is likely to succeed on the merits of its First Amendment claim to the extent that the claim is based upon the inspection provisions of Resolution No. 99-15." Order, pages 25-27.

**B.  RESOLUTION NO. 99-15 IS UNCONSTITUTIONAL IN THAT IT REQUIRES THE DISCLOSURE OF INFORMATION THAT HAS NO SUBSTANTIAL RELATION TO UNION TOWNSHIP'S PURPORTED GOVERNMENTAL INTEREST AND WHICH VIOLATES FEDERAL RIGHTS TO PRIVACY AND ANONYMITY.**

Pursuant to Resolution No. 99-15, no person is to operate an "adult cabaret" as defined

---

[7]For these same reasons, the provisions as set forth in Paragraph (M)(6) which establish additional exterior lighting requirements for adult cabarets, and which do not apply to any other facilities in Union Township let alone other types of "adult" businesses (such as bookstores, theaters, etc.), impermissibly "singles out for special regulations" adult cabarets and is therefore unconstitutional under this precedent.

therein without first being issued a permit. ¶(C)(1). In order to obtain such a permit, an owner must first complete the application required by Paragraph D. The person submitting the application must provide, *inter alia*, his or her full name, residential address, date of birth, and social security number (¶(D)(5)(C)); the full name, residential address, date of birth, and social security number of each shareholder holding more than two percent of the applicant's stock (if a corporation)[8] or of every partner (if a partnership) (¶(D)(5)(d) and (e)); the full name, residential address, date of birth, and social security number of each person employed in the cabaret "or whose employment is contemplated by the establishment" (¶(D)(5)(f)); as well as an "[a]uthorization for an investigation into the background, including *any* criminal record, of the applicant and *any person or entity named in the application* . . . ." (¶(D)(5)(I)) (emphasis added).

In addition, Paragraph (L)(2) of the Resolution enables the Board of Trustees to order a "background investigation, including the criminal record, if any, of any permittee, person named in the application for a permit, employee of a permittee[9]," whenever "there is reasonable cause to do so." There are, however, no standards contained in the Resolution to guide the Board of Trustees

---

[8]If a shareholder is a corporation or a general or limited partnership, those entities must provide the same information in regard to *their* shareholders or partners. ¶(D)(5)(e).

[9]This is a direct quote and is obviously grammatically incorrect. This provision is also contained in Res. 00-22. ¶ L. Yet, there is no reason to require employees to submit to criminal background checks (*See also* Res. 00-22, ¶ N(3)("Any employee of an adult cabaret shall cooperate with any background investigation under these regulations")), as the employee disclosures on the applications required by Res. 99-15 were repealed by Res. 00-22. *See Deja Vu of Cincinnati, L.L.C., v. Union Twp. Bd. of Trustees, et al.*, 411 F.3d 777, 795 (6th Cir. 2005) (*en banc*) (". . . employees are no longer 'named in the application for an initial or renewal permit to operate an adult cabaret'"). Consequently, there is no basis for these provisions being in Res. 00-22, and they are therefore infirm for that reason.

in determining when they can invoke this provision.[10]  If the applicant fails to provide ***any*** of this information, his, her or its application will be automatically denied.  ¶¶ D(5)(l) and F(2)(a).  In addition, the applicant, which can include the "person applying on behalf of a partnership, corporation, or other entity," must be fingerprinted.  ¶(D)(5)(C) and ¶(E).

It is unconstitutional to require the disclosure of the information as set forth above as a prerequisite for being able to engage in First Amendment protected activities.  Regulations compelling disclosures in order to be able to engage in constitutionally protected activities violate the First and Fourteenth Amendments and the corollary rights of privacy related thereto.[11]   The precedent on this issue stands for the proposition that persons are entitled to engage in First Amendment conduct, especially that which is controversial, without the public disclosure of their connection to such activities.  There is, indeed, a fundamental right to anonymously associate for the purpose of engaging in First Amendment activities.  *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 357 (1995); and *Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 167 (2002) ("The fact that circulators revealed their physical identities did

---

[10]In fact, Kenneth Geis, the Fed.R.Civ.P. Rule 30(b)(6) deponant for Union Township, admitted as such in his deposition. "Attorney Shafer: Now other than what is contained in subsection L, are there any guidelines or any other documents that have been promulgated which would provide guidance in regard to under what circumstances there would be reasonable cause to conduct such background investigations?  Geis: Other than the resolution?  Shafer: Yes, sir. Geis: No."  Deposition, p. 58; Exhibit E.  Therefore, Resolution 00-22 is unconstitutional as well.

[11]*See, e.g., Buckley v. Valeo*, 424 U.S. 1, 64 (1975); *Talley v. California*, 362 U.S. 60, 64 (1960); *N.A.A.C.P. v. Alabama ex rel Patterson*, 357 US 449, 461-62 (1958); *Genusa v. City of Peoria*, 619 F.2d 1203, 1215-17 & n.33 (7th Cir. 1980); *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 226 (6th Cir. 1995); *TK's Video, Inc. v. Denton County, Tx.*, 24 F.3d 705, 709-10 (5th Cir. 1994); *Acorn Investments, Inc. v. City of Seattle*, 887 F.2d 219, 224-26 (9th Cir. 1989); *T-Marc, Inc. v. Pinellas County, Fla.*, 804 F.Supp. 1500, 1505-06 (M.D. Fla. 1992); and *Ellwest Stereo Theatre, Inc. v. Boner*, 718 F.Supp. 1553, 1564-70 (M.D. Tenn 1989).

not foreclose our consideration of the circulators' interest in maintaining their anonymity.")  And, ownership of First Amendment protected businesses clearly falls within this zone of privacy.

In *Ellwest*, the district court there dealt with disclosure requirements for partners and shareholders that were almost identical to the provisions in Res. 99-15.  The only significant difference is that here, ¶D(5)(e) calls for information disclosure of each shareholder holding **two percent** or more of the applicant's stock, regardless of their involvement with the operation of the establishment, while the similar provision in *Ellwest* compelled disclosure of shareholders holding **five percent** or more of the stock of a corporate applicant.  *Ellwest*, 718 F.Supp. at 1564.[12]  The District Court in *Ellwest* observed that:

> "Persons who solely have ownership interests in adult-oriented establishments, such as limited partners and shareholders, have no responsibility for the day-to-day operations of the business and, therefore, are not charged with operating such establishments in accordance with the ordinance. . . .  Other courts have also consistently struck down disclosure provisions relating to stockholders and persons having only a financial interest in a business on the basis that there is insufficient necessity on the part of the government to justify such intrusion into fundamental First Amendment rights."

*Id.* at 1565.[13]

---

[12]In regard to the partnership disclosures of the two ordinances, they are identical.  They require disclosure of this personal information in regard to **any** partner.  ¶(D)(5)(d), and *Ellwest*, 718 F. Supp. at 1564.

[13]*See also Genusa*, 619 F.2d at 1217 (the Seventh Circuit striking down disclosure requirements for individual **officers, directors, and shareholders** as an "unjustified prior restraint and an invasion of privacy"); *Pentco, Inc. v. Moody*, 474 F.Supp. 1001 (S.D. Ohio 1978) (court invalidating similar disclosure provisions for partners and shareholders holding ten percent or more of the stock of a corporate applicant, on the basis that such individuals were not involved in the day-to-day management of the business); *East Brooks Books*, 48 F.3d at 226 (the Sixth Circuit invalidating an ordinance requiring disclosure of all stockholders' names); *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1366-67 (11th Cir. 1999) (court striking down **all** stockholder disclosure requirements); and *Buckley*, 424 U.S. at 64 (Court held that "compelled disclosure, in itself, can seriously infringe on the privacy of association and belief

Here, Res. 99-15 requires disclosure of information regarding partners and shareholders that have even less interest in the establishment than in *Ellwest*.  Considering the holdings above, particularly *East Brooks Books* and *Buckley*, the disclosure provisions in ¶D(5)(d) and (e) are clearly unconstitutional. In fact, here, the partners and shareholders have to submit to a criminal background check, and possibly fingerprinting, which is hardly *de minimus*.  Therefore, the provisions in Res. 99-15, ¶D(5)(d) and (e), regarding the disclosure of information of all partners and shareholders holding more than two percent of the applicant's stock, are unconstitutional.  This Court has previously agreed, finding that such disclosure requirements "may be applied in such a manner that they are more restrictive on activities protected by the First Amendment than is essential to serve the legitimate governmental interests underlying Resolution No. 99-15."  Order, September 28, 2000, page 25.

### C.    UNION TOWNSHIP HAS UNFETTERED DISCRETION IN FINDING A VIOLATION OF THE RESOLUTION TO DENY OR REVOKE A LICENSE.

When the enjoyment of protected expression is contingent upon the approval of government officials, a "prior restraint" exists. *Near v. Minnesota*, 283 U.S. 697, 713 (1931).  Since Union Township requires all owners or operators of defined Adult Cabarets to apply for and receive a permit from the Township ***before*** they can legally engage in a variety of First Amendment protected business activities, Res. 99-15 and 00-22 ¶C (Ex.'s B and C), the Resolutions therefore represent "prior restraints" on protected expression.  The only question, then, is whether this licensing process is a permissible or an impermissible (i.e., unconstitutional) prior restraint.

"Although prior restraints 'are not unconstitutional per se,' they come to court bearing a

---

guaranteed by the First Amendment").

-13-

heavy presumption against their validity." *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2000), *citing Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558-59 (1975). Under this doctrine, a scheme that places "unbridled discretion in the hands of government official or agency constitutes a prior restraint and may result in censorship." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225-226 (1990), *citing City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757 (1988). Empowering bureaucrats with unbridled discretion to determine whether to allow the engagement of expressive activities presents an unacceptable risk of both indefinitely suppressing and chilling protected speech. *See, FW/PBS*, 493 U.S. at 227; and *Freedman v. Maryland*, 380 U.S. 51, 59 (1965).

Without the constraint of specific standards to guide the decisionmaker in the judging of whether a license should be issued, impermissible dangers exist that either a government official may decide to exercise his judgment in order to suppress expression he personally finds distasteful, or that an applicant may feel compelled to censor his own speech. *See, City of Lakewood*, 486 U.S. at 757-58; and *Southeastern Promotions*, 420 U.S. at 553.

Here, the challenged provisions violate this facet of prior restraint jurisprudence, in that they impermissibly place "unbridled discretion" in the hands of various officials, boards and departments of Union Township. In both Resolutions, a permit application can be denied if - - in addition to the stated criminal convictions - - the "applicant has violated these regulations." ¶ F(2)(g). Further, the "Board may revoke the permit upon a finding of a violation of these regulations." ¶ I.[14]

---

[14]In addition, here, there is not even any provision for a mere permit suspension. The permit must be ***revoked***, thereby effectuating an impermissible prior restraint upon speech-related activities in the future for conduct that may have occurred in the past. Such a provision is constitutionally impermissible.

-14-

The discretionary nature of these provisions was admitted by the Township during the

Fed.R.Civ.P. Rule 30(b)(6) deposition, when former Township Administrator Kenneth Geis was

questioned regarding the revocation provisions in ¶ I:

| | |
|---|---|
| Attorney Shafer: | There's a sentence the board my revoke the permit upon a finding of a violation of these regulations? |
| Kenneth Geis: | Okay. |
| Shafer: | Do you see that part? |
| Geis: | Yes. |
| Shafer: | Now does that mean that if a violation is determined to have occurred that *the board has the discretion* then to either revoke the permit or not revoke the permit? |
| Geis: | *Yes.* |
| Shafer: | Okay.  *What criteria would the board use in order to determine whether or not to revoke the permit*, upon a finding of a violation? |
| Geis: | I think that's the *discretion of the board of trustees*. |

Deposition Transcript, pp. 56-57; Exhibit E.

These provisions do not pass constitutional muster.  As stated recently by the Eleventh

Circuit:

> "As a form of prior restraint, licensing schemes commonly contain two defects: discretion and the opportunity for delay. An ordinance that gives public officials the power to decide whether to permit expressive activity must *contain precise and objective criteria on which they must make their decisions; an ordinance that gives too much discretion to public officials is invalid*."

*Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1361 (11th Cir. 1999) (emphasis added),

*citing Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969).  Simply put, "a law subjecting the

exercise of First Amendment freedoms to the prior restraint of a license, *without narrow, objective,

and definite standards to guide the licensing authority*, is unconstitutional."  *Shuttlesworth*, 394

U.S. at 150-51 (emphasis added).  *See also*, *FW/PBS*, 493 U.S. at 226 (listing cases). The provisions

-15-

in ¶ F(2)(g) and ¶ I contain no such limitations.

As a district court noted in encapsulating the jurisprudence of the Supreme Court on this issue, in order to pass constitutional muster the discretion afforded licensing officials must approach zero, and "the ***decision to grant or deny a license application must be virtually a ministerial one***." *Swearson v. Meyers*, 455 F. Supp. 88, 91 (D. Kan. 1978) (emphasis in original).  *Accord*, *Lady J. Lingerie*, 176 F.3d at 1361 (". . . virtually any amount of discretion beyond the merely ministerial is suspect"). These provisions - - by the Township's ***own admission*** - - are not by any means such ministerial regulations.

Finally, and probably most importantly, Plaintiff's challenge to the constitutionality of these provisions is not predicated upon Township officials imposing conditions in a content-based fashion. As the Supreme Court has clearly stated:

> "The success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests ***not*** on whether the administrator has exercised his discretion in a content-based manner, ***but whether there is anything in the ordinance preventing him from doing so***."

*Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 n. 10 (1992) (emphasis added).  Here, there is ***nothing whatsoever in the Resolutions that prevents Union Township from using whatever violations of "these resolutions" it so desires*** to deny or revoke a permit.  The Township can pick and choose not only which violations of the Resolutions constitute a reason to deny or revoke a permit, but whether or not such violations are even used as a basis to deny or revoke a permit.

For the very clear reasons articulated by this long line of First Amendment precedent, ¶F(2)(g) and ¶I of both Resolutions are facially unconstitutional in regard to businesses that present First Amendment protected expression in that they are prior restraints, are presumed to be invalid,

-16-

carry a "heavy burden" to justify them against constitutional attack, and permit the officials of Union Township to exercise unbridled discretion in determining whether an adult cabaret may or may not operate within the Township.  These provisions are therefore unconstitutional, and are consequently impermissible and unenforceable.

### D. THE EMPLOYEE DISCLOSURE REQUIREMENT IN THE APPLICATION PROCESS IS UNCONSTITUTIONAL BECAUSE IT DOES NOT FURTHER AN IMPORTANT OR SUBSTANTIAL GOVERNMENTAL INTEREST.

Regulations enacted for the purpose of restraining expression on the basis of its ***content are presumptively invalid***. *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46-47 (1986).  "On the other hand, so-called 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication."  *Renton*, 475 U.S. at 47.  In addition, regulations which only ***incidentally*** impact upon expression are analyzed, for constitutional purposes, pursuant to a four-part test as set forth in *United States v. O'Brien*, 391 U.S. 367 (1968), which evaluates:

1. Whether the regulation at issue is within the government's constitutional power;

2. ***Whether the regulation furthers an important or substantial governmental interest;***

3. Whether the governmental interest is unrelated to the suppression of free expression; and

4. Whether the incidental restriction on alleged First Amendment freedom is no greater than is ***essential*** to the furtherance of that interest.

*Id.* at 377 (emphasis added).  These are the tests for "intermediate scrutiny."

In addition, *Renton* adds a further element into the calculus of evaluating laws directed at "adult" entertainment pursuant to intermediate constitutional scrutiny.  When determining whether

-17-

a regulation furthers an important or substantial governmental interest (the second prong of *O'Brien*), particularly in regard to being directed at the alleged "secondary effects" of "adult" businesses, the government must also document the problems that it is attempting to address in order to establish that the legislation will actually further these concerns. A city or a state, before enacting such a law, need not conduct new studies or produce evidence independent of that already generated by other municipalities in regard to such perceived problems, "so long as whatever evidence the [government] relies upon is ***reasonably believed to be relevant to the problem that [it] addresses***." *Renton*, 475 U.S. at 51-52 (clarification added).

When considering the constitutionality of laws such as this in the context of the general principles above, a number of important factors must be kept in mind. First, because of the recognized preferred position of First Amendment rights, there is no general presumption of constitutionality that would normally attach to other legislative enactments. *See, e.g.*, *Durham v. Brock*, 498 F. Supp. 213, 221 (M.D. Tenn. 1980), *aff'd*, 698 F.2d 1218 (6th Cir. 1982), and cases cited therein.

Second, it is the government's ***general*** burden to substantiate the constitutionality of the deprivation of protected rights, whether it be by way of a direct imposition or, in the context of *O'Brien*, only by an "incidental" infringement. *See, e.g.*, *Perry Education Ass'n. v. Perry Local Educator's Ass'n.*, 460 U.S. 37, 45 (1983) (strict scrutiny); and *Widmar v. Vincent*, 454 U.S. 263, 270 (1981) (intermediate scrutiny). This evidentiary burden is not diminished in any regard merely because this Plaintiff is engaged in adult entertainment. *See, e.g.*, *Phillips v. Borough of Keyport*, 107 F.3d 164, 172-73 (3d Cir. 1997) (en banc).

Specifically, the government must prove that the challenged regulations ***advance*** the

-18-

governmental interest "***in a direct and effective way***. . . ." *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989) (emphasis added). This burden is not satisfied by "mere speculation or conjecture," and the government must "***demonstrate*** that the harms it recites are real and that its restriction will in fact alleviate them to a ***material degree***." *Edenfield v. Fane*, 507 U.S. 761, 770-71(1993) (emphasis added).

Succinctly put, the ***Defendants*** are required to ***prove*** the causal connection between the asserted governmental interest and the enacted regulations. *See, e.g.*, *MD II Entertainment, Inc. v. City of Dallas*, 935 F. Supp. 1394, 1397-98 (N.D. Tex. 1995); *AAK, Inc. v. City of Woonsocket*, 830 F. Supp. 99, 104 (D.R.I. 1993); and *Nakatomi Investments, Inc. v. City of Schenectady*, 949 F. Supp. 988, 997-98 (N.D.N.Y. 1997). If this connection is not proven, the law cannot stand. *See, e.g.*, *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 226 (6th Cir. 1995) ("We now turn to the provisions challenged by plaintiffs to determine whether ***each provision*** furthers the government interest in minimizing secondary effects without posing more than an incidental burden on First Amendment rights").

It is within this constitutional framework that it becomes apparent that the application process under Resolution 00-22 has no underlying basis whatsoever, and the employee background check authorization requirements are merely superfluous in that they will not assist in the decision as to whether a permit should be issued or revoked. *See also* n. 9, *supra*. Accordingly, they cannot withstand constitutional challenge.

Paragraph (D)(5)(g) requires "authorization for an investigation into the background, including any criminal record, of the applicant or any person or entity named in the application, including authorization to conduct subsequent investigations to supplement or update the

-19-

information." The application for an adult cabaret permit was provided in the Defendant, Union Township Board of Trustee's Answers to Plaintiff's First Request for Production of Documents, attached hereto as Exhibit F. The application requires the applicant to fill out and Employee Fact Sheet. Application, Exhibit F, page II, ¶4. That Employee Fact Sheet is found on page VI of the application, and requires the **applicant** to sign the form which authorizes "Union Township to conduct a complete background investigation, including a criminal record report and further authorize" subsequent investigations. Application, Exhibit F, p. VI. The **applicant - - not** the **employee - -** is required to sign the authorization to conduct a background and criminal investigation on **each employee**, in order for the application to be completed.

First, it is doubtful whether an employer has the legal ability to authorize the police to conduct an investigation into the background of an employee. The only individual required to authorize a criminal and background investigation is the applicant, therefore that is only person who should be investigated. Second, and more importantly, there is no causal connection between the Township's purported governmental interests and the requirements of this application to provide the names and residential addresses of each employee, as well as his or her date of birth and capacity of employment. Application, Exhibit F, page VI. Accordingly, these requirements do not advance the stated governmental interest in any direct and effective way and they are each unconstitutional.

In fact, the testimony of Mr. Geis further supports the fact that this requirement does not further a governmental interest. In his recent deposition, Mr. Geis, as the Union Township representative, acknowledges that the applicant is supposed to fill out the Employee Fact sheet for each employee. Deposition Transcript, p. 26; Exhibit E. In an affidavit submitted by Mr. Geis earlier in this litigation, he explained the governmental interest that the Township sought to further

-20-

by way of these regulations:

> "The objective of the legislation was to insure that proper safeguards were in place in order to minimize the harmful secondary effect of sexually oriented businesses. For example, it was required that any sexually oriented business submit a list of employees with authorizations to conduct background checks. This was required so that Union Township could insure that individuals with convictions for sexual offenses were not permitted to work at the adult cabarets. This was to protect individuals within the adult cabarets such as the young, female dancers and customers as well as individuals in the surrounding community."

Affidavit of Kenneth Geis, ¶5; Exhibit G.

It is clear that the current resolution[15] and application for adult cabarets requires disclosure of employee information and authorization to conduct background checks into the employees. Application, Exhibit F, p. VI. However, Mr. Geis' testimony in his recent deposition contradicts the supposed furtherance of the stated governmental interest from his affidavit. After being questioned regarding page II of the application, Mr. Geis admitted that the Employee Fact Sheet is not considered in the decision to grant or deny an application:

| | |
|---|---|
| Shafer: | Okay. Now, going on in that sentence where it says and is not part of the application, do you know what is meant by that? |
| Geis: | Yes. |
| Shafer: | Okay. What does that mean? |
| Geis: | That this was not to be considered by the board of trustees in the application process. |
| Shafer: | So the employee fact sheet is not to be considered by the board of trustees in the application process; is that correct? |
| Geis: | That's correct. |

Deposition Transcript, p. 28; Exhibit E. Since the Employee Fact Sheet, which discloses personal employee information and authorizes the criminal and background investigation into each employee,

---

[15] *See also* Res. 00-22 (N)(3), which requires "[a]ny employee of an adult cabaret shall cooperate with any background investigation under these regulations."

is admittedly not considered in the application process, these requirements do not advance the stated governmental interest in any direct and effective way and they are each unconstitutional.

### E.     THE LICENSING PROVISIONS ARE UNCONSTITUTIONAL.

#### 1.     THE UNCONSTITUTIONALITY OF USING PRIOR CRIMES AND MISCONDUCT TO PRECLUDE EXERCISE OF FIRST AMENDMENT RIGHTS.

Under Res. 99-15, an application will be denied if:

"The applicant *or any person named in the application* for an initial or renewal permit to operate an adult cabaret within the past five years has been convicted of or pled guilty to an offense under Ohio Revised Code Chapter 2907 or a substantially equivalent offense under a municipal ordinance in Ohio, or under the laws of another state or territory or of the United States, or under a municipal ordinance in any such jurisdiction;" or if

"The applicant *or any person named in the application* for an initial or renewal permit to operate an adult cabaret or any person employed at the adult cabaret, has been convicted of or pled guilty to a violation of Ohio Revised Code section 503.53(C); or if"

"The applicant has violated these regulations."

Res. 99-15, ¶'s F(2)(e),(f) and (g) (emphasis added).  Similarly, under Res. 00-22, an application will be denied if:

"The applicant *or any person named in the application* for an initial or renewal permit to operate an adult cabaret *within the past three years* has been convicted of or pled guilty to an offense under Ohio Revised Code Chapter 2907 or a substantially equivalent offense under a municipal ordinance in Ohio, or under the laws of another state or territory or of the United States, or under a municipal ordinance in any such jurisdiction;"[16] or if

_____

[16]Interestingly, after this Court ruled on Plaintiff's renewed motion for preliminary injunction - - and in an obvious effort to rob Plaintiff of standing to challenge these provisions - - Union Township amended ¶ F(2)(e), via Res. 00-22, to lower the disabling time limit from five years to three years.  However, not only is this a blatant attempt to manipulate the judicial process, but given the number of entertainers and employees involved in such a business, this is certainly an issue that is capable of repetition yet evading review.

"The applicant *or any person named in the application* for an initial or renewal permit to operate an adult cabaret or any person employed at the adult cabaret, has been convicted of or pled guilty to a violation of Ohio Revised Code section 503.53(C) *within the past five years*; or"

"*The applicant has violated these regulations*."

Res. 00-22, ¶'s F(2)(e), (f) and (g) (emphasis added). Selected sections of Ohio Rev. Code §2907 and §503.53(C) are found at Exhibit H and Exhibit A respectively. After a permit is issued, the conviction or guilty plea of any owner, shareholder, partner, or "employee" of these crimes can also serve as the basis for the revocation of the permit. Res. 99-15, ¶ I; Res. 00-22, ¶ I.[17]

There are three separate disability provisions contained in the Resolutions. First, there are the provisions regarding convictions under Ohio Rev. Code § 2907; second are the provisions regarding convictions under 503.53(C)[18]; and third, a permit request can be denied if the applicant "has violated these regulations." ¶ F(2)(g). Regarding the first two of the three disability provisions - - convictions under Ohio Rev. Code § 2907 and the now-repealed Ohio Rev. Code § 503.53(C) - - Plaintiff contends that they are unconstitutional under the case law discussed immediately below. While Plaintiff does acknowledge that the Sixth Circuit has held similar provisions to be constitutional in *Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville and Davidson County, Tennessee*, 274 F.3d 377 (6th Cir. 2001), it nevertheless contends that these

_____

[17] The new enabling statute does not even provide for the suspension or revocation of a permit, it presumes that the only sanctions for violations of resolutions enacted pursuant to the statute are civil and criminal penalties. *See* Ohio Rev. Code § 503.52(D), Exhibit I. Consequently, all of the suspension and/or revocation provisions of Res. 00-22 are infirm as they directly conflict with the sole remedies provided for by the new enabling statute (even assuming that it is relevant to the *previously* enacted Res. 00-22 - - *See* Section G, *infra*).

[18] This provision (Ohio Rev. Code § 503.53(C)) no longer exists under the new enabling statute (*See* Exhibit I) that went into effect last month. Therefore, this particular disability can no longer apply and should be stricken from the Resolutions.

-23-

provisions are infirm.[19]

As the District Court noted in *Ellwest Stereo Theatre, Inc. v. Boner*, 718 F. Supp. 1553 (M.D. Tenn. 1989):

> "The Court should also note that the practice of denying a person a license to engage in activities protected by the First Amendment based on prior convictions is constitutionally suspect. *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed.2d 1357 (1931); *Pentco, [Inc. v. Moody*, 474 F. Supp. 1001 (S.D. Ohio 1978)]; *Genusa [v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980)]. In particular, the courts have consistently struck down ordinances which permit or require the denial or revocation of a license to show adult-oriented motion pictures on the basis that an applicant or an employee of an applicant has been convicted on an obscenity charge. *Cornflower Entertainment, Inc. v. Salt Lake City Corp.*, 485 F. Supp. 777 (D. Utah 1980); *City of Paducah v. Investment Entertainment*, 791 F.2d 463 (6th Cir. 1986); *Natco v. Ratner*, 463 F. Supp. 1124 (S.D.N.Y. 1979)."

718 F. Supp. at 1572 n.5 (clarification added). The reason for this is constitutionally obvious. To preclude someone from engaging in constitutionally protected conduct because of prior illegality effectuates an impermissible prior restraint. *Near v. Minnesota*, 283 U.S. 697 (1931); *Fernandez v. Limmer*, 663 F.2d 616, 630 (5th Cir. 1981) ("[p]ersons with prior criminal records are not First Amendment outcasts").

Systems of prior restraint are heavily disfavored by the Constitution. "***Any*** system of prior restraints of expression comes to this Court bearing a ***heavy presumption against its constitutional validity***." *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316 (1980) (emphasis added), quoting from *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). In *Vance*, the Court found unconstitutional a Texas law that prohibited future exhibition of films by those who had repeatedly been found to have exhibited obscene material, by quoting to the *Bantam Books* decision where the

---

[19] Nevertheless, the third disability provision contained in ¶ F(2)(g) of both Resolutions is unconstitutional, even under *Deja Vu of Nashville*, because that disability is for ***any*** violation of the Resolution and it is for ***all time***. This issue is discussed more fully below.

Court had previously observed that: "The state made the mistake of prohibiting future conduct after a finding of undesirable present conduct.  When that **future conduct**[20] may be protected by the First Amendment, the whole system must fail. . .".  *Vance*, 445 U.S. at 311 n.3, *quoting Bantam Books*, 372 U.S. at 66 (emphasis added).

Nor has Supreme Court jurisprudence changed in this regard over the years.  As recently as 1994, in *Madsen v. Women's Health Center*, 512 U.S. 753, 791 n.1 (1994), Justice Scalia, joined by Justices Kennedy and Thomas in a partial concurrence and partial dissent, observed that he knew "of no authority for the proposition that restriction of speech, rather than fines or imprisonment, should be the sanction for misconduct."  Indeed, in both *Madsen* and *Schenck v. Pro/Choice Network*, 519 U.S. 357 (1997), the Court was unanimous in its belief that previous misconduct, and even **prior illegal activity** by anti-abortion protestors, could not serve as a basis to deprive them of their rights to engage in current and future First Amendment activities.

In *Simon & Schuster v. Crime Victims Board*, 502 U.S. 105, 116 (1991), the Supreme Court held that even individuals convicted of heinous crimes such as murder could not be deprived of their First Amendment rights to author, publish, and receive royalties from books describing their criminal activities.  If the First Amendment protects the rights of such notorious murderers as the Son of Sam and Charles Manson to write and profit from books, then it surely protects the right of a person convicted of speech-related crimes (and particularly someone who has paid his or her debt

---

[20]Accordingly, it is a question of the constitutional protection of the present and future conduct that is at issue. As long as such conduct is imbued with constitutional protections -- as the performance dance at issue here certainly is -- it does not matter whether the prior convictions involved speech-related activities or not. It is the disability to engage in future First Amendment activities based upon **any prior activity** that renders such a regulation constitutionally infirm.

to society) to operate a cabaret.

Moreover, in *Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986), the Court decided the question of whether a nuisance abatement law could be imposed against a First Amendment business for ***non-speech related activities*** (prostitution).  *Id.* at 698.  While answering this question in the affirmative, the Court was quick to point out that such a use of the nuisance closure laws would not violate the prior restraint doctrine under *Near* because, *inter alia*, "the order would impose no restraint at all on the dissemination of particular materials, since respondents ***are free to carry on their book selling business at another location*** . . . ." *Id.* at 705 n.2 (emphasis added).  Additionally, in *Alexander v. United States*, 509 U.S. 544 (1993), the Court concluded that the forfeiture provisions of the federal RICO statute did not violate the First Amendment because " . . .[p]etitioner can go back into the adult entertainment business ***tomorrow*,**" and "the forfeiture order in this case imposes no ***legal impediment*** to - - no prior restraint on - - petitioner's ability to engage in ***any expressive activity he chooses*.**" *Id.* at 551 (emphasis added).  The Resolutions would not permit this, however, and indeed impose an absolute "legal impediment" to constitutionally protected expressive conduct. Here, those individuals who fall within the criminal disabilities provisions of Resolution No.'s 99-15 and 00-22 may not carry on their constitutionally-protected activities "at another location" within the Township.  Rather, they are First Amendment lepers.

The Seventh Circuit encapsulated this area of jurisprudence when it observed that "[w]e know of no doctrine that permits the state to deny to a person First Amendment liberties other than the right to vote solely because that person was once convicted of a crime or other offense." *Genusa*, 619 F.2d at 1219 n.40.  This is because, as the Supreme Court has stated in *Near*, in determining the extent of the First Amendment's "constitutional protection, it has been generally, if not universally,

considered that it is the chief purpose of the guarantee to prevent previous restraints upon publication." *Near*, 283 U.S. at 713.

Most telling, again, however, is the Seventh Circuit's later decision in *Schultz*, where that Circuit succinctly concluded:

> "The First Amendment also does not allow licensing provisions based on criminal history that 'totally prohibits certain classes of persons' from First Amendment expression . . .. 'We know of no doctrine that permits the state to deny to a person First Amendment liberties other than the right to vote solely because that person was once convicted of a crime or other offense.' . . .  Accordingly, the Ordinance disqualification provisions . . . for operator and employee licensing are unconstitutional as well . . . . Like the disqualification provisions struck down as unconstitutional in <u>Genusa [v. City of Peoria</u>, 619 F.2d 1203 (7th Cir. 1980)], these license ineligibility provisions absolutely disentitle classes of speakers from a category of expression.  They produce a complete ban on certain expression for a disqualified group of applicants, who, by definition, wish to speak, and such a drastic measure cannot be justified here as narrowly tailored to resist nolsome secondary effects."

228 F.3d at 852 (clarification added, citations omitted).

Further, it is not only statutory offenses regarding "sex crimes" and the now repealed Ohio Rev. Code § 503.53(C), that effectuate an impermissible prior restraint under the Resolutions. The third disability provision,  ¶ F(2)(g),  precludes the applicant from being issued a permit if he, she, or it had ***ever*** violated the Regulations.  A violation of the Regulations can also serve as the basis to revoke the permit.  ¶(I).[21] Most importantly, of course, there is ***no time limit for this disability***. If the applicant has ***ever*** violated the regulations, the application ***must*** be denied.  Mr. Geis admitted as such in his testimony:

| | |
|---|---|
| Shafer: | To the best of your knowledge, is there any time limit of how long ago that violation of these regulations could have occurred in order to warrant the board denying an application? |
| Geis: | ***No.*** |

---

[21]For the same reasons as are set forth in this subsection above, ¶(I) is similarly unconstitutional.

Deposition Transcript, p. 47 (emphasis added).

Both Resolutions require that the "Board shall approve the application ***unless***: . . .  The applicant has violated these regulations."  Res. 99-15 ¶ F(2)(g) and Res. 00-22 ¶ F(2)(g).   Such a draconian provision, precluding licensing ***for all time*** to engage in constitutionally protected activities, cannot be reconciled with the First Amendment.  Once an applicant has violated even one provision of the Regulations, that person can ***never*** obtain a permit to engage in First Amendment activities in Union Township.

The unconstitutionality of this particular limitless disability is highlighted by the decision of the Sixth Circuit regarding this issue in *Deja Vu of Nashville, Inc., et al. v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 274 F.3d 377 (6th Cir. 2001), where the court held:

> "In light of the temporary nature of the ban and the narrow reach of the provisions (applying only to those who have committed a felony sex crime within the last five years or a misdemeanor sex crime within the last two years), we do not find that these provisions violate the Constitution."

*Id.* at 392.

There, the disability provisions were limited to convictions that occurred only within two to five years prior to the application.   Here, the provisions are neither temporary or narrow, encompassing ***any violation of "these resolutions" that ever occurred***!  It is telling that when Union Township amended its regulations by Res. 00-22, it limited the disability by denying an application for convictions under Ohio Rev. Code within the past three years (instead of five) and for convictions of Ohio Rev. Code § 503.53(C) within the past five years (as opposed to not limiting the time of the conviction at all).  However, the Township failed to either limit the time of the disability in ¶ F(2)(g), or narrow the scope of the disability itself.

Additionally, in contrast to the requirements of ¶'s F(2)(e) and (f) to both Resolutions, the

-28-

provision in ¶ F(2)(g) does not necessarily require any "conviction" or guilty plea. It is unclear, and therefore impermissibly vague, as to whether the mere allegation by the government of a violation of "these regulations" is sufficient to trigger the denial of an application.  The uncertainty of this provision is highlighted by the Rule 30(b)(6) deposition testimony regarding what "violations" could be grounds for denial:

| | |
|---|---|
| Attorney Shafer: | . . .It would be a violation of the ordinance not to supplement, for example, the employee list within 20 days after there's a change of employees; correct? |
| Kenneth Geis: | Yes. |
| Shafer: | And that would be a violation of the resolution; correct? |
| Geis: | It would be contrary to the resolution, yes. |
| Shafer: | And that could be used as a basis to revoke the permit; correct? |
| Attorney Barbiere: | Objection. |
| Geis: | *I don't know.* |
| Shafer: | Okay.  Well, let's go back to I on page seven and go down one, two, three, four, five, six, seven, eight lines, there's a sentence that says the board may revoke the permit upon a finding of a violation of these regulations. Do you see that part? |
| Geis: | Yes. |
| Shafer: | Okay.  So if the permittee does not file the revised employee list within 20 days as required by the resolution, which would be a violation, that could be used as a basis to revoke the permit; correct? |
| Barbiere: | Objection. |
| Geis: | It's my same answer.  *I don't know if that in itself could be used.* |

Deposition Transcript, p. 39-40 (emphasis added); Exhibit E.  Even the Township's own representative could not state what would trigger a denial of a permit under those provisions.

Unquestionably, pursuant to the precedent as set forth above, these restrictions are impermissible.

##### 2. THE LACK OF A MENS REA ELEMENT AND THE INABILITY TO REFUTE THE CONVICTION.

The licensing disability provisions discussed above create an irrebuttable presumption against licensure based upon the conviction of, or engagement in, the enumerated crimes and/or activities. There is no ability to explain the conduct giving rise to the conviction or alleged violation, or to be able to otherwise rebut the use of a prior conviction or plea as requiring the denial of a permit application.

The same is true in regard to the revocation provisions of the Resolutions. ¶(I) in both Res. 99-15 and 00-22 permits the trustees to revoke a permit "upon discovery of a violation of *this resolution*, or on any of the same grounds listed in section (F)(2) for denial of the permit. . ." (emphasis added). "[T]his resolution" includes such matters as requiring employees to cooperate with "*any* background investigation under the regulations" (¶ N(3)); and prohibiting employees from engaging in certain type of touching of other individuals on the premises (¶ N(4)). This revocation provision imposes absolute, unqualified, and irrefutable strict liability on the part of the permit holder in regard to *any* offending conduct by his, her or its "employees" (as that term is broadly defined in the resolution), regardless of whether the conduct occurred on the licensed premises[22] and regardless of whether the permittee condoned or was even aware of the conduct. Again, an irrebuttable presumption against licensure. Such provisions, imposing absolute strict liability, are unconstitutional.

The law disfavors irrebuttable presumptions. *Pentco, Inc. v. Moody*, 474 F. Supp. 1001, 1005 (S.D. Ohio 1978), *citing Vlandis v. Kline*, 412 U.S. 441 (1973). Even if the conviction of certain enumerated crimes or activity could, arguably, be a factor upon which the Township could base the denial of a permit application, "the presumption that any such conviction *automatically*

---

[22]Denial of a permit under "(F)(2)" can be based on a criminal conviction of an employee unassociated with the business activities. Res. 99-15, ¶'s F(2)(e) and (f).

***renders an applicant unfit is repugnant to the due process and equal protection clauses of the
Fourteenth Amendment***." *Pentco*, 474 F. Supp. at 1005 (emphasis added). To be constitutional,
such a law must afford an individual an opportunity "to controvert the statutory presumption." *Id.*,
citing *Carrington v. Rash*, 380 U.S. 89 (1965); *Bell v. Burson*, 402 U.S. 535 (1971); *Stanley v.
Illinois*, 405 U.S. 645 (1972); and *Vlandis*, *supra*. Just as the lack of ability to controvert caused this
Court to determine the ordinance in question in *Pentco* to be unconstitutional (474 F. Supp. at 1006),
the irrebuttable nature of the presumption in Res. 99-15 and 00-22 is constitutionally infirm for the
same reason.

Similarly, the disability provisions contain absolutely no mens rea requirement. Such a
failing renders the law unconstitutional. The rationale for the unconstitutional nature of such
provisions is best set forth in detail in the unpublished decision of the Sixth Circuit in *Lee v.
Newport*, No. 91-00613, 947 F.2d 945 (Table) (6th Cir. Nov. 5, 1991), at 1991 WL 227750 (Exhibit
J). At issue in *Lee* was the constitutionality of an occupational licensing provision which required
license revocation if, within a certain period of time, there had been a:

> ". . .conviction of any licensee or his agent, servants or employees, for any action or
> activity occurring in, on, or at the premises covered by the license, in violation of any
> provision of this division or any other division of the City of Newport, of any
> criminal or penal statute of the Commonwealth of Kentucky against gambling,
> disorderly conduct, or any other criminal or penal offense, and a judgment of
> conviction in any court of competent jurisdiction shall be conclusive evidence of
> such violation. . .".

1991 WL 227750, at *1. And, coincidentally, that case involved an "adult oriented nightclub." *Id.*

Upon revocation of the license, all business activity at that location was to cease
immediately. *Id.* Two of the owners' employees had been convicted of acts of prostitution (one
being convicted twice) that had occurred **on** the business premises at issue.[23] The city then sought

---

[23]The circumstances are even more egregious in regard to the Regulations here, where a
revocation (or permit denial) could be based upon the conduct of an employee ***unrelated*** to the
permitted business.

to revoke the owner's license based on the provisions set forth above.  The uncontradicted testimony was, however, that the owner was not aware of prostitution or solicitation occurring on the premises even though she was working at the club on the night in question.  *Id.* at *2.

The Sixth Circuit determined that the issue concerning lack of knowledge of the acts of an employee was determinative.  Succinctly put, this Court stated:

> "The effect of the ordinance is either to create a presumption of knowledge or to eliminate any requirement of knowledge on the part of the licensee or operator of illegal activities or prohibited conduct on the premises based simply on the fact of a conviction of a licensee's employee. . . .The District Court effectively applied an ***irrebuttable presumption***, but one that 'presumed a fact which was not necessarily or universally true.'"

*Id.* (emphasis added), *citing Weinberger v. Salfi*, 422 U.S. 749 (1975).

The Sixth Circuit held that when a procedure forecloses the determinative issue, it runs "roughshod over the important interests of a licensee and the conduct of her business and the exercise of First Amendment rights."  *Id.*, *citing Stanley v. Illinois*, 405 U.S. 645 (1972).  Consequently, the nature of the irrebuttable presumption as contained in the regulation at issue there was constitutionally impermissible.  *Lee*, at *6.  Similarly, the strict liability nature of the provision rendered it unconstitutional.  *Id.*, at *7.  The same holds true in these Resolutions.

## F.    THE "NO TOUCH" PROVISIONS ARE UNCONSTITUTIONAL.

Section N(4) of Res. 00-22 states:

> "(4)    No employee of an adult cabaret, in the performance of his or her duties, shall knowingly do any of the following:
>
> (a)    Place his or her hand upon, ***touch with any part of his or her body***, fondle in any manner, or massage the genitals, pubic area, or buttocks of any other person.
>
> (b)    Perform, offer, or agree to perform any act that would require the touching of the genitals, pubic area, or buttocks of any other person or the breasts of any female or, if the employee is a female, of any other female;

-32-

  (c) Uncover the genitals, pubic area, or buttocks of any other person or the breasts of any female or, if the employee is a female, of any other female.

  (d) Place his or her hand upon, ***touch with any part of his or her body***, fondle in any manner, or massage the breasts of any other female.

  (e) Perform, offer, or agree to perform any act that would require the touching of the breasts of any other female." (Emphasis added)

Defendants take the position that entertainers fall under the category of defined "employees." Section A(3). Accordingly, this provision clearly precludes the specified touching even ***between and among entertainers, regardless of whether they are fully clothed***!

Exotic dancers at the Deja Vu club engage in performances where there are two or more dancers on the stage at the same time. These performances do contain, on occasion, contact and touching between the entertainers. This contact comprises part of the entertainment performances. However, such performances are specifically prohibited by ¶ N(4).[24] This would include performances by two entertainers who are fully clothed, and are standing next to each other, swinging their hips back and forth so that their buttocks may touch the other's hip (***or any part of her body*** per the provision), or if an entertainer hugged another entertainer (or put her arm around her) so that her clothed breasts touched the second entertainer on ***any part of her body***.

The overbreadth of such a provision was addressed by the Seventh Circuit in *Schultz v. City of Cumberland*, 228 F.3d 831 (7th Cir. 2000). There, the ordinance's prohibition on "specified sexual activities" was found to be unconstitutional. The court specifically noted that the prohibition

---

[24] Because these performances do at times contain touching, the challenged prohibitions are certainly content-specific, requiring this Court to impose strict scrutiny in its analysis.

on "fondling or erotic touching of human genitals, pubic region, buttocks, anus, or female breasts,"[25] effectively outlawed "the performance of a strikingly wide array of sexually explicit dance movements." *Id.* at 847. Moreover, the court found that "[b]y restricting the particular movements and gestures of the erotic dancer . . . the Ordinance unconstitutionally burden[ed] protected expression." *Id.* (clarification added). As a result, a performer was deprived of a "repertoire of expressive elements with which to craft an erotic, sensual performance and [the ordinance] thereby interefere[d] substantially with the dancer's ability to communicate her erotic message." *Id.* (clarification added). The prohibition on "specified sexual activities" was found unconstitutional as it "prevent[ed] erotic dancers from practicing their protected form of expression." *Id.* at 848. (clarification added).

The Ninth Circuit followed similar reasoning when it declared as unconstitutional an ordinance that prohibited dancers from engaging in "simulated sex acts," including the "fondling or other erotic touching of the human genitals, pubic region, buttocks, anus or female breast," in *Dream Palace, LLC v. County of Maricopa*, 384 F.3d 990 (9th Cir. 2004). There, the ordinance "restrict[ed] the ***particular*** movements and gestures a dancer may or may not make during the course of a performance." *Id.* at 1019 (clarification added; emphasis in original). Since the ordinance was a total ban on a particular kind of erotic expression, the court found that it was solely directed by its terms to activity that conveys eroticism or sexuality and failed to pass constitutional muster under strict scrutiny.

In agreeing with the Seventh Circuit's decision in *Schultz*, the Ninth Circuit noted "Maricopa County cannot avoid the constitutional prohibition on proscribing non-obscene speech 'by regulating

---

[25]     These are virtually the same prohibitions as are contained in ¶ N(4).

nude dancing with such stringent restrictions that the dance no longer conveys eroticism nor resembles adult entertainment.'" *Id.* at 1021, *quoting Schultz*, 228 F.3d at 844. Ultimately, the ordinance was found unconstitutional as it was overly broad and restricted in "sweeping terms the ability of erotic dancers to convey their intended erotic message." *Id.*[26] The same constitutional infirmities are present in ¶ N(4).

### G. BOTH RESOLUTIONS ARE PREEMPTED BY THE STATE ENABLING STATUTE.

Both Res. 99-15 and Res. 00-22, were enacted by the Union Township Board of Trustees pursuant to the enabling statute found at Ohio Rev. Code §§ 503.51 *et seq*. *See* Exhibits A, B and C. Numerous and various provisions of Res. 00-22 and Res. 99-15 violate the provisions of the enabling statute as it existed at the time of adoption of the respective Resolutions, as they contradict the provisions of those statutes and exceed the authority granted to Union Township by those statutes.

The Ohio Supreme Court has long held that:

"[W]hatever authority townships posses to enact local police power regulations is

---

[26]     *See also Score LLC v. City of Shoreline*, 319 F. Supp.2d 1224 (W.D. Wash. 2004) (pursuant to the reasoning in *Schultz*, an ordinance prohibiting "simulated sexual conduct" was overbroad as it resulted in a complete ban on certain non-obscene expression and directly restricted the manner in which the dancers perform and the message that they convey); *Eggert Group, LLC v. Town of Harrison*, 372 F. Supp.2d 1123, 1143 (E.D. Wis. 2005) (ordinance prohibiting sexual contact was unconstitutional as it prohibited a "substantial amount of nudity and/or simulated sexual activity that [was] not associated with negative secondary effects") (clarification added); and *Threesome Entertainment v. Strittmather*, 4 F. Supp. 2d 710, 723 (N.D. Ohio 1998) (the overbreadth of a similar "no touch" provision was addressed but not resolved because the District court's ruling in regard to the lack of a scienter requirement rendered such analysis moot. However, the court observed that "it is less clear whether a prohibition of non-overtly sexual touching *between two dancers while performing* . . . would also be constitutional . . . [as it] may implicate suppression of protected expression.") (Clarification added; emphasis in original).

-35-

limited to that which is ***specifically conferred by statute***.  In this regard, the court observed:

> 'At the outset it must be noted that the townships of Ohio have no inherent or constitutionally granted police power, the power upon which zoning legislation is based.  Whatever police or zoning power townships of Ohio have is that delegated by the General Assembly, and it follows that such power is ***limited to that which is expressly delegated to them by statute***.'"

*Bd of Twp. Trustees of Bainbridge Twp.  v. Funtime, Inc.*, 55 Ohio St.3d 106, 108, 563 N.E.2d 717, 719 (1990) (emphasis added), *citing Yorkavitz v. Bd. of Trustees of Columbia Twp.*, 166 Ohio St. 349, 351, 142 N.E.2d 655, 656 (1957).  Therefore, Union Township was limited to enacting that which was ***expressly*** delegated to it by the enabling statute.  If a police power "violates ***an explicit statutory command*** of the General Assembly, it is preempted and is therefore invalid and unenforceable." *Dsuban et al. v. Union Twp. Bd. of Zoning Appeals*, 140 Ohio App.3d 602, 608-09, 748 N.E.2d 597 (2000) (emphasis added).

Several provisions of Res. 00-22, for example, violate explicit statutory commands of the General Assembly as set forth in the enabling statute, thereby rendering the Resolution invalid and unenforceable.  Those violations include:

a.      The application disclosure requirements set forth in ¶ (D)(5) do not conform to the requirements of Ohio Rev. Code § 503.54[27];

---

[27]The applicable enabling statute stated that the application for a permit to operate an adult cabaret "***shall*** include" several items. Ohio Rev. Code § 503.54(A) - (D), Exhibit A.  Not only does Res. 00-22 require more information than is permitted in the enabling statute (¶ D(5)(a), (b), (d), (e), (f), (h), and (i)), but it fails to require information that the enabling statute states ***must be included*** in the application, such as the social security number of each individual. Ohio Rev. Code § 503.54(A).  Further, Res. 00-22 requires authorization to investigate the background investigation, including any criminal record, of ***any person*** named in the application (¶ D(5)(g) - - not just for the person applying for the permit as required by  Ohio Rev. Code § 503.54(D).  As discussed in Section D above, this includes authorization for an investigation of employees, not just the applicant; something which is not permitted by the enabling statute.

b.    ¶ (F)(2)(e) contains a three year time limit for this civil disability, whereas there is no such restriction in Ohio Rev. Code § 503.55(C)[28];

c.    ¶ (F)(2)(f) contains a five year time limit for this civil disability provision, and applies to the applicant or any person named in the application as well as to any person employed at the adult cabaret, whereas the enabling statute as set forth in Ohio Rev. Code § 503.55(D) is solely limited to persons employed at the licensed adult cabaret and has no time constraints[29];

d.    ¶ (F)(2)(a) provides a basis to deny an application which is not permitted pursuant to Ohio Rev. Code § 503.55[30];

e.    ¶ (F)(2)(c) provides a basis to deny an application which is not permitted pursuant to Ohio Rev. Code § 503.55[31];

---

[28] Res. 00-22 does not comply with the enabling statute by limiting the disqualifying conviction to one that has occurred within the past three years, when the enabling statute clearly states that a township that has adopted a resolution pursuant to that statute "***shall deny*** . . . ***or revoke***" a permit if any person named on the application has been convicted of or pled guilty to of any violation of Chapter 2907 or its municipal equivalent, with ***no limitation*** on the time of said conviction.

[29] In addition to the reasons as set forth in the footnote immediately above which establish that Res. 00-22 does not comply with the requirements of the applicable enabling statute by limiting the time frame of the conviction, this provision is now superfluous and irrelevant since it disqualifies an applicant from receiving a permit if he, she, or it violates Ohio Rev. Code § 503.53(C); a statutory provision which ***no longer exists***. Exhibit I.

[30] ¶ F(2)(a) provides that the application shall be approved unless the "application is incomplete, contains any false information, ***or fails to comply with these regulations***." This reason to deny the application is not set forth in the enabling statute, which clearly establishes that a township "***shall deny***" any application for five - - and only five - - specific reasons.

[31] ¶ F(2)(c) provides that the application ***shall*** be approved unless the "operation of an adult cabaret at the specified premises would violate the existing zoning regulations," which is not one of the specifically enumerated reasons for a township to deny an application pursuant to the enabling statute.

-37-

f.      ¶ (F)(2)(g) provides a basis to deny an application which is not permitted pursuant to Ohio Rev. Code § 503.55[32];

g.      ¶ (F)(2) does not contain all of the reasons that a permit is to be denied pursuant to Ohio Rev. Code § 503.55[33].

h.      ¶ (I) provides for a basis to revoke a permit which is not permitted pursuant to Ohio Rev. Code § 503.55[34];

i.      ¶ (I) does not provide for all of the grounds to revoke a permit which are specified in Ohio Rev. Code § 503.55[35];

---

[32] ¶ F(2)(g) provides that the application **shall** be approved unless the "applicant has violated these regulations," which is also not one of the specifically enumerated reasons for a township to deny an application pursuant to the enabling statute.

[33] ¶ F(2) states that the Board "**shall** approve" an application unless seven different conditions are present.  This section fails to comply with the enabling statute because it does not require an application to be denied for some of the reasons **required** by the enabling statute, such as failure to cooperate with any required health or safety inspections (Ohio Rev. Code § 503.55(B)) and if a person named on the application has had a permit revoked by the liquor control commission under Ohio Rev. Code § 4301.25 (Ohio Rev. Code § 503.55(E)).

[34] ¶ I states that a permit can be revoked "upon discovery of a violation of this resolution," which is not one of the specifically enumerated reasons for a township to revoke a previously issued permit pursuant to the enabling statute.  Further, ¶ I provides that a permit may be revoked "on any of the same grounds listed in section (F)(2)."  Therefore, those grounds for denial of an initial permit which are not allowed by Ohio Rev. Code § 503.55 (as discussed in reasons (d), (e) and (f) above), similarly render these grounds for revocation in conflict with the enabling statute.

[35] ¶ I provides that a permit may be revoked upon discovery of a violation of Res. 00-22 as well as for any of the grounds listed in ¶ (F)(2) for denial of the permit.  ¶ F(2) states that the Board "**shall** approve" an application unless seven different conditions are present.  ¶ I fails to comply with the enabling statute because it does not require an application to be revoked for some of the reasons required by the enabling statute, such as failure to cooperate with any required health or safety inspections (Ohio Rev. Code § 503.55(B)) and if a person named on the application has had a permit revoked by the liquor control commission under Ohio Rev. Code § 4301.25 (Ohio Rev. Code § 503.55(E)).

j.      ¶ (N)(4)(e) contains a prohibition which is not permitted pursuant to Ohio Rev. Code § 503.53[36]; and

k.      It does not provide all of the prohibitions as contained in Ohio Rev. Code § 503.53[37].

All of the provisions of Res. 00-22 which fail to conform to, contradict, and/or exceed the authority granted by Ohio Rev. Code §§ 503.51, *et seq.,* are void and unenforceable.[38]  Accordingly, these provisions violate the Plaintiff's due process and liberty rights under the Fourteenth Amendment by imposing invalid laws upon them.

In addition, even though Plaintiff vehemently denies that the recently revised enabling statute has anything to do with the validity of Resolutions 99-15 or 00-22, Plaintiff  would point out that the new enabling statute, unlike the previous enabling statute, does not provide for the suspension and/or revocation of licenses or permits.  It only provides for criminal and civil monetary sanctions. *See* Ohio Rev. Code §§ 503.52(A), 503.53(D), and 503.53(B)(2), Exhibit I.  Accordingly, all of the provisions as contained in Res. 00-22 which provide for the suspension and/or revocation of a permit

---

[36] ¶ N(4)(e) prohibits an employee of an adult cabaret to "[p]erform, offer, or agree to perform any act that would require the touching of the breasts of any other female."  This is not one of the prohibitions as set forth in Ohio Rev. Code § 503.53(C), and is separate from ¶ N(4)(b), which prohibits an employee to "[p]erform, offer, or agree to perform any act that would require the touching of the genitals, pubic area, or buttocks of any other person or the breasts of any female, or if the employee is a female, of any other female."

[37] There are specific prohibitions that a township ***must*** enact if it "has adopted a resolution" under the enabling statute. Ohio Rev. Code § 503.53.  Res. 00-22 fails to comply with the enabling statute because it does not contain two of those specifically enumerated prohibitions: Refusing to allow authorities access to the adult cabaret to conduct certain inspections (Ohio Rev. Code § 503.53(B)(1)); and establishing or operating an adult cabaret with five hundred feet from a school, church, library, public playground or township park (Ohio Rev. Code § 503.53(B)(4)).

[38] For the same reasons, the similar provisions in Res. 99-15 are also pre-empted, void, and unenforceable.

-39-

are invalid under the new enabling statute, if the Court were to determine that it has any application whatsoever to the enforceability of that Resolution.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Honorable Court grant its motion for partial summary judgment, declare Resolutions 99-15 and 00-22 unconstitutional, and permanently enjoin their enforcement.


Dated: September 8, 2006                              Respectfully Submitted,


                                                      SHAFER & ASSOCIATES, P.C.


                                                          /s/ Bradley J. Shafer
                                                      BRADLEY J. SHAFER (MI Bar No.  P36604)*
                                                      3800 Capital City Boulevard, Suite #2
                                                      Lansing, Michigan 48906
                                                      Telephone: (517) 886-6560
                                                      Telecopier: (517) 886-6565
                                                      *Admitted *Pro Hac Vice*

                                                      and

                                                      SIRKIN, PINALES, & SCHWARTZ LLP


                                                          /s/ H. Louis Sirkin
                                                      H. Louis Sirkin (Ohio Bar No. 0024573)
                                                      Jennifer M. Kinsley (Ohio Bar No. 0071629)
                                                      105 West Fourth Street, Suite 920
                                                      Cincinnati, Ohio 45202
                                                      Telephone:  (513) 721-4876
                                                      Telecopier: (513) 721-0876


                                                      Attorneys for Plaintiff, Deja Vu of Cincinnati, L.L.C.

-40-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2006, I electronically filed the above Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification to the following: Lawrence E. Barbiere, Attorney for Defendants, Union Township Board of Trustees, Kenneth Geis, and Union Township Police Department, and Sharon A. Jennings, Esq., Assistant Attorney General, State of Ohio.


    /s/ Bradley J. Shafer                    
Bradley J. Shafer
Attorney for Plaintiff, Deja Vu of Cincinnati, LLC