UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Deja Vu of Cincinnati, LLC,      :   Case No. 1:99-cv-726
                                 :
      Plaintiff,                 :
                                 :
vs.                              :
                                 :
Union Township Board of          :
Trustees, et al,                 :
                                 :
      Defendants.                :


**ORDER**

     This matter is before the Court following remand from the en
banc Sixth Circuit of Appeals in <u>Deja Vu of Cincinnati, LLC v.
Union Township Board of Trustees, et al</u>, 411 F.3d. 777 (6th Cir.
2005).  Now pending before the Court are the parties' motions for
summary judgment.

     Plaintiff's motion (Doc. 68) asks the Court to declare Union
Township Resolutions 99-15 and 00-22, and an Ohio enabling
statute that was in effect when these resolutions were adopted,
unconstitutional in various respects.  These enactments regulate
adult cabarets, one of which Deja Vu operates in Union Township.
Union Township's motion (Doc. 67) generally argues that
Plaintiff's claims are moot, barred by the law of the case
announced in the Sixth Circuit's en banc opinion, or should be
denied on the merits.  The Ohio Attorney General, who intervened

in this case to defend the Ohio statute, seeks dismissal of the claims challenging Ohio's statute, based on the intervening and substantive statutory amendment that renders Plaintiff's claims moot.  (Doc. 69)

**BACKGROUND**

Deja Vu filed its original complaint in September 1999 after Union Township enacted Resolution No. 99-15, regulating and licensing adult cabaret nightclubs.  Deja Vu began operating a cabaret earlier that year, featuring clothed, semi-nude, and nude exotic dancers.  After briefing and arguments, and the Supreme Court's decision in <u>Erie v. P.A.P.'s A.M.</u>, 529 U.S. 277 (2000), this Court preliminarily enjoined the enforcement of sections of the Resolution pertaining to warrantless inspections, and disclosure of personal information by certain cabaret owners. This Court denied preliminary injunctive relief against other sections of the ordinance, concluding they would pass constitutional muster.

Deja Vu appealed, and this case was stayed pending its resolution.  While the appeal was pending, Union Township enacted Resolution No. 00-22 to amend and replace Resolution No. 99-15. The new ordinance omitted the provisions which the Court had enjoined.  Resolution 00-22 also reduced the disability periods for prior convictions of certain defined offenses in (F)(2)(e) and (f), although this Court had concluded that the corresponding

sections of Resolution 99-15 were likely constitutional.  (The text of Resolution No. 00-22 is Exhibit 4 Deja Vu's amended complaint, Doc. 59.)

A panel of the Sixth Circuit affirmed in part and reversed in part this Court's preliminary injunction.  See <u>Deja Vu of Cincinnati v. Union Township</u>, 326 F.3d 791 (6th Cir. 2003). However, the Circuit granted en banc review and subsequently affirmed in all respects this Court's denial of injunctive relief.  See <u>Deja Vu of Cincinnati v. Union Township</u>, 411 F.3d 777 (6th Cir. 2005) (hereinafter "<u>Deja Vu of Cincinnati</u>").  The Circuit expressed no opinion on the grant of the preliminary injunction against the inspection and disclosure requirements, in light of the Township's adoption of Resolution 00-22.  The Circuit remanded the matter to this Court for further proceedings consistent with its opinion.

Deja Vu filed an amended complaint in January 2006.  (Doc. 59) It seeks declaratory and injunctive relief as to both Township resolutions; a declaration that Resolution 00-22 conflicts with former R.C. 503.51, et seq; and a declaration that the former enabling statute is unconstitutional.

In August 2006, the Ohio Legislature's Am. Sub. H.B. 23 became effective, repealing all sections of the former enabling statute, and replacing them with a different statutory approach. R.C. 503.51-503.53 as amended essentially grants to Ohio

-3-

townships the same home rule powers to regulate adult cabarets
that Ohio municipalities have.  (The text of the new statute is
Exhibit B to Deja Vu's amended complaint, Doc. 59.)

**ANALYSIS**

1.  <u>Summary Judgment Standards</u>.

The standards for summary judgment are well established.
Summary judgment is proper "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party
opposing a properly supported summary judgment motion "'may not
rest upon the mere allegations or denials of his pleading, but
... must set forth specific facts showing that there is a genuine
issue for trial.'"  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.
242, 248 (1986) (quoting <u>First Nat'l Bank of Arizona v. Cities
Serv. Co.</u>, 391 U.S. 253 (1968)).  The Court is not duty bound to
search the entire record in an effort to establish a lack of
material facts.  <u>Guarino v. Brookfield Township Trs.</u>, 980 F.2d
399, 404 (6th Cir. 1992); <u>InterRoyal Corp. v. Sponseller</u>, 889
F.2d 108, 111 (6th Cir. 1989), <u>cert. den.</u>, <u>Superior Roll Forming
Co. v. InterRoyal Corp.</u>, 494 U.S. 1091 (1990).  Rather, the
burden is on the non-moving party to "present affirmative
evidence to defeat a properly supported motion for summary

-4-

judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-
80 (6ᵗʰ Cir. 1989), and to designate specific facts in dispute.
Anderson, 477 U.S. at 250. The non-moving party "must do more
than simply show that there is some metaphysical doubt as to the
material facts." Matsushita Electric Industries Co. v. Zenith
Radio Corp., 475 U.S. 574, 586 (1986). The court construes the
evidence presented in the light most favorable to the non-movant
and draws all justifiable inferences in the non-movant's favor.
United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and
determine the truth of the matter, but to determine whether there
is a genuine issue for trial. Anderson, 477 U.S. at 249. The
court must assess "whether there is the need for trial — whether,
in other words, there are any genuine factual issues that
properly can be resolved only by a finder of fact because they
may reasonably be resolved in favor of either party." Id. at
250. "If the evidence is merely colorable, . . . , or is not
significantly probative, . . . , the court may grant judgment."
Anderson, 477 U.S. at 249-50 (citations omitted).

Although summary judgment must be used with extreme caution
since it operates to deny a litigant his day in court, Smith v.
Hudson, 600 F.2d 60, 63 (6th Cir. 1979), cert. dismissed, 444
U.S. 986 (1979), the United States Supreme Court has stated that
the "[s]ummary judgment procedure is properly regarded not as a

-5-

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citations omitted).

2.    Challenges to Resolution No. 99-15.

Deja Vu seeks a final judgment that Sections (L)(1) and (M)(2) concerning warrantless inspections, and portions of Sections (D)(5)(d) and (e), requiring disclosure of personal information from certain partners and shareholders of permitees, are unconstitutional.  The Court preliminarily enjoined enforcement of these sections in its September 2000 Order. Resolution 00-22 omits these sections, so they do not currently have force of law in Union Township.

The Sixth Circuit addressed the inspection provisions obliquely, because the Attorney General filed a cross-appeal asking that the injunction on inspections be reversed.  (Union Township did not appeal this question, and instead amended its ordinance.)  The Sixth Circuit declined to entertain the Attorney General's appeal because the constitutionality of the Ohio enabling statute, the only basis for the Attorney General's intervention in the lawsuit, was not implicated.  The Court then noted:

> Even though we express no opinion on the
> constitutionality of the warrantless health

-6-

> and safety inspections, the district court's
> temporary injunction remains in effect, and
> we find nothing in the record to indicate
> that Union Township will attempt to reenact
> the provisions already deemed offensive to
> the Fourth Amendment.  If the district court
> should abruptly change course on remand and
> fail to permanently enjoin Union Township
> from conducting the warrantless health and
> safety inspections, that determination would
> of course be reviewable by this court on
> appeal from a final judgment below.

Deja Vu Cincinnati, 411 F.3d at 797.

With regard to the disclosure provisions of Sections (D)(5)(d) and (e), the Sixth Circuit did not address them because neither Union Township nor the Attorney General appealed the Court's ruling.  And, as with the provisions on inspections, the new ordinance omits these requirements entirely.

Union Township argues these questions, and all of Deja Vu's arguments concerning 99-15, are moot because Resolution 99-15 was repealed and has never been enforced.  There is nothing in the record to date raising the slightest inference that Union Township will reinstitute these provisions at any point in time. The preliminary injunction with respect to these provisions remains in effect.

Deja Vu has not demonstrated an entitlement to a permanent injunction, as it has not shown it will suffer any "continuing irreparable injury" under Resolution 99-15.  See Deja Vu of Nashville v. Metropolitan Gov't of Nashville, 466 F.3d 391, 394 (6th Cir. 2006) (permanent injunction proper where party

-7-

establishes a constitutional violation and will suffer continuing irreparable injury for which there is no adequate remedy at law). The Court rejects Deja Vu's argument that the cursory damage allegations of its first amended complaint, or the modest license fee required by the Township ($250), are enough to support entry of a permanent injunction.

Of course, it is true that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Deja Vu of Cincinnati, 411 F.3d at 795 (citing City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)). The Court has already preliminarily enjoined these challenged sections of Resolution 99-15 and the Court is not dissolving that injunction at this time. Whether a permanent injunction would be appropriate, or whether the preliminary injunction should be dissolved, are matters to be determined at the conclusion of this case.

3. **Denial or Revocation of a License Based on Applicant's Violation of the Resolution.**

Section (F)(2)(g) of Resolution 00-22 states that the Board shall not approve a permit application if "The applicant has violated these regulations." Resolution 99-15 contained an identical provision. Section (I) allows revocation of a permit upon any ground listed in section (F)(2). Deja Vu argues these sections vest "unbridled discretion" in the Board to deny or

-8-

revoke a permit, and therefore are unconstitutional.  In support,
Deja Vu cites the deposition testimony of the Township
Administrator who was asked what criteria the Board would use to
determine whether to revoke a permit once a resolution violation
had been found.  He answered he believed that was within the
"discretion of the board of trustees."

Deja Vu relies on Lady J. Lingerie v. City of Jacksonville,
176 F.3d 1358 (11th Cir. 1999), and Shuttlesworth v. City of
Birmingham, 394 U.S. 147 (1969) and its progeny, that "a law
subjecting the exercise of First Amendment freedoms to the prior
restraint of a license, without narrow, objective, and definite
standards to guide the licensing authority, is unconstitutional."
Id. at 150-151.  The Supreme Court's resolution of the City of
Birmingham's absolute denial of Reverend Shuttlesworth's request
for a peaceful march permit does not aid Deja Vu in this case.
And in Lady J. Lingerie, the Eleventh Circuit found that a city's
zoning ordinance ran afoul of the First Amendment.  That
ordinance allowed the denial of a zoning variance based on run-
of-the-mill zoning considerations, such as "compatibility" with
contiguous uses, "environmental impact," or fire exits that are
"sufficiently accessible."  The Court concluded that such
standards, when applied to the exercise of First Amendment
protected activity, vested almost complete discretion in the
governmental decision-makers to deny a variance.  Here, in

contrast, the terms of Resolution 00-22 are clear and unambiguous, and do not require "discretion" in order to determine whether or not any part of the Resolution has been violated.

This Court previously concluded that Deja Vu had standing to facially challenge Resolution 99-15 on First Amendment grounds because it did not put a fixed time limit on the Board's action on a permit application.  The Court rejected Deja Vu's argument that other portions of the Resolution gave the Board "unbridled discretion" in the licensing decision, noting that the Resolution requires the Board to grant a permit unless clearly described circumstances exist.  (See Doc. 31, pp. 8-10.)

The Court again concludes that Section (F)(2)(g) of Resolution 00-22 does not unconstitutionally give the Board "unbridled discretion" to deny a permit and thus infringe on Deja Vu's First Amendment rights.  The terms of the Resolution are unambiguous and are clearly delineated.  Union Township persuasively notes that almost any regulatory ordinance will include a provision requiring compliance with its terms.  Without it, the governing authority may not be able to enforce its own ordinance.  And in the event the Board should deny a permit, Deja Vu is entitled to a temporary permit and to appeal.  See Sections (J)(1) and (2).

Deja Vu also attacks this subsection because it purports to

-10-

impose a permanent disability on an applicant.  Deja Vu suggests
that any "technical" violation of the Resolution will result in a
complete inability to obtain a permit.  Deja Vu seizes on the
Sixth Circuit's description of the Nashville cabaret ordinance's
disability restrictions as both "temporary" and of "narrow reach"
(see <u>Deja Vu of Nashville</u>, 274 F.3d 393), to attack the
"permanent" disability imposed by Section (F)(2)(g).  Deja Vu
also cites the Township Administrator's response to a
hypothetical question of whether a permitee's failure to file a
revised employee list within 20 calendar days (required by the
Resolution) would result in a permit revocation: "I don't know if
that in itself could be used."

While licensing schemes including disability provisions have
been widely upheld, there is apparently no definitive outer
boundary yet defined by the higher courts.  In <u>Kentucky</u>
<u>Restaurant Concepts, Inc. v. City of Louisville</u>, 209 F.Supp.2d
672 (W.D. Ky 2002) (Heyburn, C.J.), the district court faced this
question and analyzed two Sixth Circuit decisions; <u>Deja Vu of</u>
<u>Nashville</u>, and <u>DLS, Inc. v. City of Chattanooga</u>, 107 F.3d 403
(6th Cir. 1997).  The district court concluded that read
together, <u>DLS</u> and <u>Deja Vu</u> suggest three relevant factors to
examine a disabilities provision: the duration of the disabling
period, the nature of the underlying disabling offense; and, the
relationship between the disabling offense and the secondary

effects the Ordinance is designed to combat.  <u>Kentucky Restaurant Concepts</u>, 290 F.Supp.2d at 688-689.

A disability provision allowing denial or revocation of a permit for violating the very ordinance under which the permit is granted does not run afoul of any of these considerations.


Deja Vu's facial challenge to this section is therefore without merit.  Hypertechnical violations or unfair application of the Resolution can be challenged both in hearings provided for under the Resolution, and in as-applied litigation.

4.  **Employee Disclosure Requirements.**

Section (D)(5)(g) of Resolution 00-22 requires as part of the permit application, an "Authorization for an investigation into the background, including any criminal record, of the applicant and any person or entity named in the application, including authorization to conduct subsequent investigations to supplement or update the information."  The Board may also order an investigation of any permittee or any employee, including criminal record checks, upon "reasonable cause."  (Section L) Section M(3) requires a cabaret operator to file a list of employees with the Clerk, and an amended list within 20 calendar days of any change in personnel.  The list must include the name, birthdate and position of each employee.  Section N(3) requires any cabaret employee to cooperate with any background

-12-

investigation under these regulations.

This Court's preliminary injunction order addressed
Plaintiff's challenges to even broader disclosure requirements of
Resolution 99-15. (See Doc. 31 at pp. 20-25.) That Resolution
required every employee's name, residence address, birthdate,
social security number, and position as part of the permit
application. The Court found these disclosure requirements, as
well as those imposed upon owners and applicants, met the fourth
requirement of the O'Brien[1] test: the incidental restrictions
imposed are no greater than essential to further the important
governmental interests underlying the resolution. In other
words, the Court concluded the disclosure requirements are
reasonable. See Richland Bookmart, Inc. v. Nichols, 137 F.3d
435, 440 (6th Cir. 1998): "Under present First Amendment
principles governing regulation of sex literature, the real
question is one of reasonableness. The appropriate inquiry is
whether [the ordinance] is designed to serve a substantial
government interest and allows for alternative avenues of
communication."

The employee disclosure requirements of Resolution 00-22 are
less intrusive than those of Resolution 99-15; residential
addresses and social security numbers of employees are not
required, and employee information is not required in an

_____

[1] See United States v. O'Brien, 391 U.S. 367, 377 (1968).

-13-

application.  The Sixth Circuit's en banc opinion specifically
rejected Deja Vu's arguments, concluding that the Resolution 00-
22's disclosure requirements were reasonable, especially in view
of the fact that Resolution 00-22 omitted the portions of
Resolution 99-15 this Court had enjoined.  In order to safeguard
applicants and employees from any unwarranted public disclosure
of personal information, the Sixth Circuit held that this
information is exempt from disclosure under the Ohio Public
Records Act, R.C. 149.43.  The Sixth Circuit also noted that even
broader disclosure requirements were upheld in <u>Deja Vu of</u>
<u>Nashville</u>, 274 F.3d at 393, and rejected Deja Vu's arguments in
**this** case as "without merit."  <u>Deja Vu of Cincinnati</u>, 411 F.3d at
794.

Given these prior rulings, Union Township argues that Deja
Vu's attack on the disclosure requirements is barred by the law
of the case doctrine of <u>National Hockey League Players' Assn v.</u>
<u>Plymouth Whalers Hockey Club</u>, 419 F.3d 462 (6th Cir. 2005).
There, the Sixth Circuit stated that a district court is bound by
determinations of the appeals court unless one of three
circumstances is met: (1) substantially different evidence is
subsequently raised; (2) a subsequent contrary and controlling
view of the law is decided; or (3) a decision is clearly
erroneous and would work a manifest injustice.

Neither (2) nor (3) apply here.  Deja Vu's motion argues

-14-

that, despite the lack of a **requirement** for pre-permit employee disclosures under Resolution 00-22, the Township in fact requires such information in an "Employee Fact Sheet" submitted with the application.  The Fact Sheet is signed by the permit applicant and purports to authorize a background investigation on each employee.  The Township administrator testified that the Fact Sheet is not considered by the Board during the application process.  This is reflected in Paragraph 4 of the application instructions, which plainly states "All applicants must fill out the employee fact sheet.  The employee fact sheet will be filed with the Clerk.  It is not a public record and is not part of the application."  Deja Vu argues that if this information is not part of the application, then the pre-permit disclosures do not further the stated governmental interest underlying the Resolution, "to insure that individuals with convictions for sexual offenses were not permitted to work at the adult cabarets."  (Affidavit of Kenneth Geis at ¶5.)

The Court questions whether this constitutes "substantially different evidence" such that this Court should consider Deja Vu's renewed challenge to the disclosure provisions.  Assuming it does, the Court concludes the disclosure requirements are reasonable even if the Resolution requires the Employee Fact Sheet to be filed with the permit application.  Resolution 00-22 clearly permits the Board to investigate any employee at any time

-15-

upon reasonable cause; and all cabaret employees are required to cooperate with any such investigation.  Union Township argues that the submission of employee information "up front," rather than after a permit is issued, is not an unreasonable burden on the applicant.  The Court agrees.  In addition, the fact that Union Township no longer "pre-screens" cabaret employees during the permit application does not invalidate the underlying purposes of the Resolution, which are far broader than merely forbidding certain employees from working at a cabaret.

The minimal employee disclosure requirements of Resolution 00-22 do not violate Deja Vu's constitutional rights.

5.   **Disability Provisions Based on Prior Convictions.**

Sections (F)(2)(e) and (f) of Resolution 00-22 state that the Board can deny a permit to an applicant or anyone named in the application who has been convicted of an offense under R.C. 2907 (or similar laws in another state) within three years, or an offense under former R.C. 503.53(C) within five years.  R.C. 503.53(c), repealed by Am. Sub. H.B. 23, forbids cabaret employees from knowingly touching, fondling or massaging certain specified body areas of another person.  A violation of these sections was a third degree misdemeanor under R.C. 503.59(B), which has also been repealed.

This Court's preliminary injunction order rejected Deja Vu's challenge to similar but broader disability restrictions in

-16-

Resolution 99-15.  (See Doc. 31, p. 19.)  Those restrictions were
five years for any sex offense under R.C. 2907, or permanent
disability for any violation of R.C. 503.53(C).

The Sixth Circuit concluded that Deja Vu lacked standing to
contest the disability provisions in Resolution 00-22, because
the only evidence Deja Vu offered to contest Resolution 99-15
would not disqualify Deja Vu from obtaining a permit under the
amended terms of Resolution 00-22.  The Sixth Circuit also noted
that Resolution 00-22 does not require employees to be "named in
the application."  As a result, the Court concluded that the
revised disability provisions do not apply to employees,
confirming Deja Vu's lack of standing to challenge these
sections.  <u>Deja Vu of Cincinnati</u>, 411 F.3d at 795-796.

Deja Vu's pending motion again challenges the disability
provisions as unconstitutional.  But Deja Vu has not offered any
new evidence that gives it standing to challenge these
restrictions.  Instead, Deja Vu points to Section (F)(2)(f),
which on its face requires **denial** of a permit based on an
**employee** conviction under former R.C. 501.53(C).  Deja Vu
suggests that the Sixth Circuit's conclusion that the disability
provisions of Resolution 00-22 do not apply to employees is not
correct.  The Sixth Circuit also rejected Deja Vu's argument that
the provisions should be reviewed because

> . . . the rapid turnover of entertainers and others in
> this industry insures that this issue is capable of

-17-

> repetition, yet evading review . . .  This argument
> focuses on the transient nature of employment of adult
> cabarets.  But, as noted above, the resolution no
> longer requires the disclosure of employees in the
> application or provides for the revocation of a license
> based upon any prior criminal convictions of employees.

Deja Vu of Cincinnati, 411 F.3d at 796.  The Sixth Circuit

apparently left open the question of whether this argument would

be sufficient to give Deja Vu standing to facially challenge the

Resolution if the Board could revoke a license based on an

employee's prior criminal conviction.

Assuming Deja Vu has standing to challenge Section (F)(2)(f)

under the "capable of repetition yet evading review" rubric, this

Court concludes that the disability provision is valid, because

it imposes an incidental burden no greater than essential to

further the government interests underlying the Resolution.  See

United States v. O'Brien, 391 U.S. at 377.  It would be anomalous

indeed to conclude that the owner of a cabaret can be

constitutionally disabled due to prior convictions, yet conclude

that the Township has no constitutional ability to police or

sanction the same conduct by cabaret employees.  The Court also

notes that the proscriptions of R.C. 501.53(C) are no longer in

the Ohio statute, but they are incorporated in Resolution 00-22,

Section (N)(4)(a) through (e).

Deja Vu also recognizes, as it must, that the Sixth Circuit

held very similar provisions constitutional in Deja Vu of

Nashville, 274 F.3d at 393.  The Nashville provisions were two

-18-

years for a misdemeanor sex offense, and five years for a felony
offense (including rape, sexual assault, prostitution and
obscenity).  One group of plaintiffs in the Nashville case had
standing to challenge these provisions, but the Sixth Circuit
concluded they were valid:

> The Ordinance's civil disabilities provisions
> serve to weed out those applicants most
> likely to engage in the type of criminal
> behavior that the Ordinance seeks to redress
> by temporarily disqualifying those who have
> recently committed such acts from working for
> sexually oriented establishments, or
> alternatively, from declaring any sexually
> oriented establishment closely associated
> with such an individual ineligible to
> operate.  In light of the temporary nature of
> the ban and the narrow reach of the
> provisions (applying only to those who have
> committed a felony sex crime within the last
> five years or a misdemeanor sex crime within
> the last two years), we do not find that
> these provisions violate the Constitution.

The Court reaches the same conclusion about Resolution 00-
22's disability provisions.

Deja Vu also attacks the disability provisions by arguing
they create an "irrebutable presumption" against a permitee based
on prior criminal conduct, violating due process rights of permit
applicants and recipients. Deja Vu cites Pentco, Inc. v. Moody,
474 F.Supp. 1001 (S.D. Ohio 1978), and an unpublished Sixth
Circuit decision, Lee v. City of Newport, 947 F.2d 945 (Table)
(6th Cir. Nov. 5, 1991) to argue that automatic disqualification
based on a prior conviction is unconstitutional.  The Court

-19-

disagrees.  First and foremost, Resolution 00-22 requires an evidentiary hearing for applicants and for permit holders facing revocation, under Sections (F) and (I).  Lee v. City of Newport involved a licensing ordinance under which the city revoked the licensee's permit,  her protected property interest, without requiring her actual  knowledge of the disabling activities of her employees, and without an opportunity to present evidence in her defense.  Due process deprivations loom in such a scenario. Resolution 00-22 cannot be compared to the City of Newport's licensing ordinance, because the Township's Resolution requires the Board to provide permit applicants and holders adequate due process through notice and adversarial, evidentiary hearings.

Similarly, the city ordinance at issue in Pentco disqualified applicants for a license to operate a non-medical massage parlor if the applicant had two or more felony convictions within the past five years.  The district court quite reasonably concluded that such a broad prohibition bore no rational relationship to the city's regulatory goals.  Here, the disabling convictions are limited to those directly connected to the activities of an adult cabaret and are tailored to meet the Township's stated concerns in enacting the Resolution.

The Court therefore concludes that the disability provisions of Section (F)(2)(e) and (f) are valid.

6.  **Section N's Prohibition on "Touching."**

-20-

Deja Vu argues that Sections (N)(4)(a) and (d) of Resolution 00-22 are overbroad, because they forbid all employees (including performers) to "touch with any part of his or her body" any specified part of another person. Deja Vu's exotic dancers sometimes perform with two or more dancers on stage, and these performers may "touch" each other as part of the performance. Deja Vu argues the Resolution covers even two fully-clothed entertainers from inadvertently touching each other's buttocks while "swinging their hips," or a female entertainer whose breasts are covered from hugging another performer. Relying on Schultz v. City of Cumberland, 228 F.3d 831 (7th Cir. 2000), and Dream Palace LLC v. County of Maricopa, 384 F.3d 990 (9th Cir. 2004), Deja Vu urges the Court to declare this part of the Resolution overbroad.

Facial challenges to overbroad regulations are permissible under FW/PBS, Inc. v. Dallas, 493 U.S. 215, 224 (1990). But such challenges require "substantial" overbreadth; see, e.g., Los Angeles City Council v. Taxpayers for Vincent, 466 U.S. 789, 783 (1984): "It is clear, however, that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." And as recently reiterated in Prime Media, Inc. v. City of Brentwood, ___ F.3d ___, 2007 Fed. App. 0031P (6th Cir., January 22, 2007), Deja Vu must satisfy the doctrine's "threshold

-21-

requirement of an injury in fact." Id. at **7.

Section (N)(4) clearly states that no cabaret employee shall **knowingly** engage in the conduct described in subparagraphs (a) through (e).  Incidental or inadvertent "touching" is simply not covered.  Moreover, Deja Vu has offered no evidence to establish that it has suffered an "injury in fact" as a result of Section (N)'s prohibitions.  This Court notes and agrees with the following observations:

> To be sure, the [Township] could read the plain language of this Ordinance as applying to incidental and general social touching in a way impermissible under First Amendment jurisprudence. However, to do so would require an interpretation entirely inconsistent with the obvious purpose of the Ordinance, which is to limit touching between entertainers and others during any erotic dance performance.  Given both the evident legislative intent and the actual text, the [Township's] interpretation is a reasonable one, and the Court should not contort the Ordinance to conjure up a hypothetical constitutional clash where none actually exists.

Ky. Restaurant Concepts v. Louisville, 209 F.Supp.2d at 672 (internal citations and quotations omitted).

The Sixth Circuit has already rejected Deja Vu's argument that "touching" used in Section N(4)(b) is unconstitutionally vague, noting that while the term may not be defined with "meticulous specificity," it was sufficiently clear so that a reasonable person can understand its meaning.

Therefore, the Court concludes that Section (N)(4) is not unconstitutionally overbroad and withstands Deja Vu's facial

challenges.

7.   Pre-emption by Ohio's Former Enabling Statute.

Deja Vu contends that both of the Township's resolutions violate provisions of the prior Ohio enabling statute, which was in effect when the Resolutions were adopted.  Deja Vu's motion cites eleven different sections it argues are either broader than the former statute, or not broad enough to satisfy that statute's requirements.  (See Doc. 68, pp. 36-39.)  Deja Vu's opposition to Union Township's motion narrowed these challenges to three: (1) the Resolutions do not contain some of the mandatory obligations of the old statute; (2) the civil disability time periods of the Resolution are narrower than those of the former statute; and (3) the "new" enabling statute permits Townships to impose only fines and criminal sanctions, and does not allow the Township to suspend or revoke a permit.[2]

As noted above, Am. Sub. House Bill 23 became Ohio law on August 17, 2006.  This bill repealed the former R.C. 503.51-59 and completely rewrote township enabling legislation.  The new statute, R.C. 503.51-53, grants Ohio townships the same powers as municipalities now have to regulate adult cabarets:

> Townships have authority to exercise all
> powers of local self-government regarding the
> operation of adult entertainment

_____

[2] Deja Vu argues that the new statute is irrelevant to the validity of the Township resolutions, but notes this objection should the Court disagree.

-23-

> establishments within their limits and to
> adopt and enforce within their limits any local police,
> sanitary, and similar regulations regarding the
> operation of adult entertainment establishments that
> are not in conflict with general laws. The regulations
> may include, **but are not limited to**, anti-nudity
> restrictions, limitations on hours of operation,
> interior configuration requirements, and requirements
> that adult entertainment establishments and their
> employees obtain licenses or permits to operate as or
> to be employed by an adult entertainment establishment.

R.C. 503.52(A) (emphasis added).

The Township and the Attorney General argue that Deja Vu's claims that the Township Resolutions violate the former statute are now moot, given the new statute and its significantly different scope and grant of township powers.

A statutory challenge seeking only declaratory relief generally becomes moot when the statute is significantly amended or repealed while the challenge is pending. See, e.g., Diffenderfer v. Central Baptist Church of Miami, Inc., 404 U.S. 412, 413 (1972). See also, Suster v. Marshall, 149 F.3d 523 (6th Cir. 1998), holding that the Court of Appeals could not consider the challenge to a legislative enactment because it had recently been amended, relying on Diffenderfer.

Given the major changes in the Ohio statute, the Court is persuaded that this case does not present one of the exceptions to the mootness doctrine discussed in Diffenderfer. There is no suggestion that the Ohio Legislature amended the statute while under "fire" from litigation or any court order, nor is there any

-24-

evidence that the Legislature will reinstitute the former statute (as was the case in <u>Deja Vu of Nashville</u>, where the City Council intended to reinstitute the provisions of the ordinance the district court concluded were unconstitutional).  Nor does Deja Vu present a situation involving the likelihood of irreparable injury if the question of the Resolutions' validity under a now-repealed statute is not decided immediately.

The Court therefore dismisses as **MOOT** Deja Vu's challenges to Resolution 99-15 and Resolution 00-22, insofar as Deja Vu argues the Resolutions violated former R.C. 501.51 - 501.59 in any respect.

Insofar as Deja Vu challenges the newly revised Ohio statute, it suggests in passing that the statute forbids a Township to revoke a permit.  This suggestion is belied by the text of the statute, which specifically grants permit powers to the townships.  It defies logic to suggest that a Township can grant a permit, but be denied power to revoke a permit if the permit ordinance is violated.

8.   **The Attorney General's Motion**.

The Ohio Attorney General, who intervened in this case to defend the Ohio enabling statute, seeks summary judgment on Counts Seven and Eight of Plaintiff's First Amended Complaint, those claims which challenge the constitutionality of the former statute.  The Attorney General also requests that he be dismissed

-25-

from this case.

Deja Vu's opposition (Doc. 74) reiterates many of its arguments raised concerning mootness of its challenges to the Resolutions under the former enabling statute.  Deja Vu correctly notes that an Ohio township's police powers are limited to those expressly granted by the Legislature, and suggests this Court has an obligation to decide the effect of the former statute on both Resolutions.  The Missouri cases upon which Deja Vu almost exclusively relies need no extended discussion here because they are plainly inapplicable to this case.

Deja Vu also argues that the Legislature has not announced that it will not seek to reinstitute the former version of the statute.  There is no requirement in the cases applying the mootness doctrine that an elected body provide such an announcement; this Court must not presume bad faith or ulterior motive in the absence of such a legislative pronouncement, and there is absolutely nothing in the record that gives rise to the slightest suggestion of bad faith or ulterior motive on the part of the Ohio Legislature. (Deja Vu intimates some darker motive to the Legislature's action, suggesting it is not a "coincidence" that the amendments took place after the Sixth Circuit's en banc opinion in this case.  This suggestion is puzzling in view of the Sixth Circuit's decision finding the Township Resolution constitutional in most respects, and the fact that the court did

-26-

not even address the enabling statute.)

Deja Vu also argues that its attack on the now-repealed statute survives because Deja Vu has a claim for damages against Union Township, citing Buckhannon Board & Care Home v. West Virginia Dept. Of Health and Human Resources, 532 U.S. 598, 606-607 (2001). Deja Vu has no damages claim against the Attorney General, who appears in this case solely in his official capacity. Deja Vu's alleged damages claim against the Township, or the fact that Deja Vu will have to pay a modest permit fee, are likewise insufficient to prolong litigation over a now-repealed statute.

The Court therefore grants summary judgment to the Defendants on Counts Seven and Eight of the First Amended Complaint. However, out of an abundance of caution, the Court will not dismiss the Attorney General as yet. As the Supreme Court noted in Diffenderfer, "it is possible that appellants may wish to amend their complaint so as to demonstrate that the repealed statute retains some continuing force or to attack the newly enacted legislation." The Court therefore orders Deja Vu to show cause, within thirty days of the entry of this Order, as to why the Attorney General should not be dismissed from this case and to file an amended complaint addressing the new Ohio statute if it chooses to do so. Merely rearguing the continuing vitality of former R.C. 501.51 through .59, absent specific

factual evidence of that continuing vitality, will not be

sufficient to establish good cause.

## CONCLUSION

For all of the foregoing reasons, the Court grants in part

and denies in part the parties' motions for summary judgment.

SO ORDERED.


DATED: February 15, 2007          s/Sandra S. Beckwith
                                  Sandra S. Beckwith, Chief Judge
                                  United States District Court